USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1317 UNITED STATES, Appellee, v. RICHARD W. CZUBINSKI, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ [Hon. Robert B. Collings, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Susan B. Hanmer, with whom Oliver C. Mitchell, Jr., Louis J. _______________ _______________________ ________ Scerra, Jr. and Goldstein & Manello, P.C. were on brief for ____________ ___________________________ appellant. S. Theodore Merritt, Assistant United States Attorney, with ___________________ whom Donald K. Stern, United States Attorney, and Amy B. Lederer, _______________ ______________ Assistant United States Attorney, were on brief for appellee. ____________________ February 21, 1997 ____________________ TORRUELLA, Chief Judge. Defendant-appellant Richard TORRUELLA, Chief Judge. ___________ Czubinski ("Czubinski") appeals his jury conviction on nine counts of wire fraud, 18 U.S.C. 1343, 1346, and four counts of computer fraud, 18 U.S.C. 1030(a)(4). The wire fraud and computer fraud prosecution that led to the conviction survived serious challenges put forward by Czubinski in various pre-trial motions. Given the broad scope of the federal fraud statutes, motions charging insufficient pleadings or selective prosecution generally deserve careful consideration. We need not scrutinize the lower court's rejection of the defendant's arguments in favor of dismissing the indictment, however, because we reverse the conviction on the clearer ground that the trial evidence mustered by the government was insufficient to support a guilty verdict, and hold that the defendant's motion for judgment of acquittal should have been granted on all counts. Unauthorized browsing of taxpayer files, although certainly inappropriate conduct, cannot, without more, sustain this federal felony conviction. BACKGROUND BACKGROUND I. Pertinent Facts I. Pertinent Facts On an appeal from a jury conviction, we review the relevant facts in the light most favorable to the government. United States v. Tierney, 760 F.2d 382, 384 (1st Cir. 1985). The _____________ _______ evidence in this case, so presented, is inadequate to support convictions on either the wire fraud or computer fraud charges. For all periods relevant to the acts giving rise to his conviction, the defendant Czubinski was employed as a Contact -2- Representative in the Boston office of the Taxpayer Services Division of the Internal Revenue Service ("IRS"). To perform his official duties, which mainly involved answering questions from taxpayers regarding their returns, Czubinski routinely accessed information from one of the IRS's computer systems known as the Integrated Data Retrieval System ("IDRS"). Using a valid password given to Contact Representatives, certain search codes, and taxpayer social security numbers, Czubinski was able to retrieve, to his terminal screen in Boston, income tax return information regarding virtually any taxpayer -- information that is permanently stored in the IDRS "master file" located in Martinsburg, West Virginia. In the period of Czubinski's employ, IRS rules plainly stated that employees with passwords and access codes were not permitted to access files on IDRS outside of the course of their official duties.1  In 1992, Czubinski carried out numerous unauthorized  ____________________ 1 In 1987 Czubinski signed an acknowledgment of receipt of the IRS Rules of Conduct, which contained the following rule: Employees must make every effort to assure security and prevent unauthorized disclosure of protected information data in the use of Government owned or leased computers. In addition, employees may not use any Service computer system for other than official purposes. See Government's Exhibit 1. In addition, Czubinski received ___ separate rules regarding use of the IDRS, one of which states:  Access only those accounts required to accomplish your official duties. See Government's Exhibit 3. ___ -3- searches of IDRS files. He knowingly disregarded IRS rules by looking at confidential information obtained by performing computer searches that were outside of the scope of his duties as a Contact Representative, including, but not limited to, the searches listed in the indictment.2 Audit trails performed by internal IRS auditors establish that Czubinski frequently made unauthorized accesses on IDRS in 1992. For example, Czubinski accessed information regarding: the tax returns of two individuals involved in the David Duke presidential campaign; the joint tax return of an assistant district attorney (who had been prosecuting Czubinski's father on an unrelated felony offense) and his wife; the tax return of Boston City Counselor Jim Kelly's Campaign Committee (Kelly had defeated Czubinski in the previous election for the Counselor seat for District 2); the tax return of one of his brothers' instructors; the joint tax return of a Boston Housing Authority police officer, who was involved in a community organization with one of Czubinski's brothers, and the officer's wife; and the tax return of a woman Czubinski had dated a few times. Czubinski also accessed the files of various other social acquaintances by performing unauthorized searches.  Nothing in the record indicates that Czubinski did anything more than knowingly disregard IRS rules by observing the confidential information he accessed. No evidence suggests, nor  ____________________ 2 The indictment charged ten counts of wire fraud for accessing the return information of ten different entities; the four computer fraud counts (counts eleven through fourteen) identified unauthorized searches that also underlay four of the ten wire fraud counts (counts one, two, eight and nine). -4- does the government contend, that Czubinski disclosed the confidential information he accessed to any third parties. The government's only evidence demonstrating any intent to use the confidential information for nefarious ends was the trial testimony of William A. Murray, an acquaintance of Czubinski who briefly participated in Czubinski's local Invisible Knights of the Ku Klux Klan ("KKK") chapter and worked with him on the David Duke campaign. Murray testified that Czubinski had once stated at a social gathering in "early 1992" that "he intended to use some of that information to build dossiers on people" involved in "the white supremacist movement." Trial Transcript, Vol. 2 at 170, 188. There is, however, no evidence that Czubinski created dossiers, took steps toward making dossiers (such as by printing out or recording the information he browsed), or shared any of the information he accessed in the years following the single comment to Murray. No other witness testified to having any knowledge of Czubinski's alleged intent to create "dossiers" on KKK members. The record shows that Czubinski did not perform any unauthorized searches after 1992. He continued to be employed as a Contact Representative until June 1995, when a grand jury returned an indictment against him on ten counts of federal wire fraud under 18 U.S.C. 1343, 1346, and four counts of federal interest computer fraud under 18 U.S.C. 1030(a)(4). The portion of the indictment alleging wire fraud states that Czubinski defrauded the IRS of confidential property -5- and defrauded the IRS and the public of his honest services by using his valid password to acquire confidential taxpayer information as part of a scheme to: 1) build "dossiers" on associates in the KKK; 2) seek information regarding an assistant district attorney who was then prosecuting Czubinski's father on an unrelated criminal charge; and 3) perform opposition research by inspecting the records of a political opponent in the race for a Boston City Councilor seat. The wire fraud indictment, therefore, articulated particular personal ends to which the unauthorized access to confidential information through interstate wires was allegedly a means. The portion of the indictment setting forth the computer fraud charges stated that Czubinski obtained something of value, beyond the mere unauthorized use of a federal interest computer, by performing certain searches -- searches representing a subset of those making up the mail fraud counts. II. Proceedings Below II. Proceedings Below After indictment and arraignment in June 1995, Czubinski filed a motion to dismiss the indictment, a motion to strike surplusage from the indictment, and a motion for discovery from the government relating to a claim of selective prosecution. In separate orders, a magistrate judge and the district court rejected all of these motions. Specifically, the district court rejected Czubinski's argument that counts 1 through 10 of the indictment must be dismissed because "browsing" does not deprive the IRS of any property and because section 1346, the intangible -6- right to honest services amendment to the mail and wire fraud statutes, was unconstitutionally vague as applied to him. In December 1995, Czubinski filed motions in limine which ___________ essentially sought to prevent references to certain white supremacist activities, such as his membership in a KKK chapter, during trial. This motion was also denied, although the trial court gave a limiting instruction regarding the relevance of Czubinski's KKK membership to a finding of wire fraud and computer fraud. On December 15, 1995, the district court denied Czubinski's motion for judgment of acquittal on all counts except for count 3,3 and on that day the jury returned a verdict finding Czubinski guilty on all thirteen remaining counts. On appeal, Czubinski challenges the denial of his motion to dismiss the indictment, including the rejection of a selective prosecution claim, the finding that he had not made out a prima facie case of selective prosecution, the admission at trial of allegedly inflammatory evidence of Czubinski's white supremacist activities, the denial of his motion for acquittal, the jury instructions, and the sentencing determination. We reverse on the ground that the district court erred in denying Czubinski's motion for acquittal, and therefore bypass Czubinski's other claims.  ____________________ 3 On count 3, the district court ruled that there was insufficient proof showing that the search alleged in count 3 was not requested by the taxpayer whose files were browsed. -7- STANDARD OF REVIEW STANDARD OF REVIEW A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 is the proper vehicle for a defendant to make a sufficiency challenge. See 2 C. Wright, Federal Practice ___ and Procedure: Crim. 2d 467 (1982). The denial of a motion for judgment of acquittal presents a question of law, and our review is de novo. See United States v. Staula, 80 F.3d 596, 604 (1st ________ ___ _____________ ______ Cir. 1996). We determine anew whether "the evidence is sufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In determining the evidentiary sufficiency of a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any ___ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 _______ ________ U.S. 307, 319 (1979); see also United States v. Valle, 72 F.3d _________ _____________ _____ 210, 216 (1st Cir. 1995). The scope of review is over the totality of the evidence, both direct and circumstantial: we "take a hard look at the record" and "reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." United States v. Spinney, _____________ _______ 65 F.3d 231, 234 (1st Cir. 1995). DISCUSSION DISCUSSION I. The Wire Fraud Counts I. The Wire Fraud Counts We turn first to Czubinski's conviction on the nine -8- wire fraud counts.4 To support a conviction for wire fraud, the government must prove two elements beyond a reasonable doubt: (1) the defendant's knowing and willing participation in a scheme or artifice to defraud with the specific intent to defraud, and (2) the use of interstate wire communications in furtherance of the scheme. United States v. Sawyer, 85 F.3d 713, 723 (1st Cir. _____________ ______ 1996) (citing United States v. Cassiere, 4 F.3d 1006, 1011 (1st _____________ ________ Cir. 1993)). Although defendant's motion for judgment of acquittal places emphasis on shortcomings in proof with regard to the second element, by arguing that the wire transmissions at issue were not proved to be interstate, we find the first element dispositive and hold that the government failed to prove beyond a reasonable doubt that the defendant willfully participated in a scheme to defraud within the meaning of the wire fraud statute.5  ____________________ 4 The federal wire fraud statute, 18 U.S.C. 1343, provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.  5 We do not find that it was irrational for a trier of fact to conclude beyond a reasonable doubt that Czubinski's searches caused information from the IDRS master file in Martinsburg, West Virginia, to be sent to his terminal in Boston. The interstate element could reasonably be inferred from circumstantial evidence. See, e.g., Testimony of Edward Makaskill, Trial ___ ____ -9- That is, assuming the counts accurately describe unauthorized searches of taxpayer returns through interstate wire transmissions, there is insufficiant record evidence to permit a rational jury to conclude that the wire transmissions were part of a criminal scheme to defraud under sections 1343 and 1346. The government pursued two theories of wire fraud in this prosecution: first, that Czubinski defrauded the IRS of its property, under section 1343, by acquiring confidential information for certain intended personal uses; second, that he defrauded the IRS and the public of their intangible right to his honest services, under sections 1343 and 1346.6 We consider the evidence with regard to each theory, in turn. A. Scheme to Defraud IRS of Property A. Scheme to Defraud IRS of Property The government correctly notes that confidential  ____________________ Transcript, Vol. 3 at 82 (explaining that certain command codes used by Czubinski generally access information from out-of-state computer). 6 The district court's jury instructions on the wire fraud counts repeat both of the scheme to defraud theories:  In this case, the government has charged Mr. Czubinski with devising a scheme or artifice, that is, a plan, to do two things: (1) to defraud the IRS, the United States Government, and the citizens and taxpayers of the United States by depriving them of their intangible right to his honest services as an IRS employee; and (2) to defraud the IRS and to obtain its property, that is, confidential taxpayer information, by false pretenses, representations and promises. Trial Transcript, Vol. 4 at 76-77. -10- information may constitute intangible "property" and that its unauthorized dissemination or other use may deprive the owner of its property rights. See Carpenter v. United States, 484 U.S. ___ _________ ______________ 19, 26 (1987) ("Confidential business information has long been recognized as property. . . . [A newspaper] had a property right in keeping confidential and making exclusive use, prior to publication, of the schedule and contents" of a particular column.). Where such deprivation is effected through dishonest or deceitful means, a "scheme to defraud," within the meaning of the wire fraud statute, is shown. See id. at 27. Thus, a ___ __ necessary step toward satisfying the "scheme to defraud" element in this context is showing that the defendant intended to "deprive" another of their protected right. The government, however, provides no case in support of its contention here that merely accessing confidential information, without doing, or clearly intending to do, more, is tantamount to a deprivation of IRS property under the wire fraud statute. In Carpenter, for example, the confidential information _________ regarding the contents of a newspaper column was converted to the defendants's use to their substantial benefit. See id. at 27 ___ __ (defendants participated in "ongoing scheme to share profit from trading in anticipation" of newspaper column). We do not think that Czubinski's unauthorized browsing, even if done with the intent to deceive the IRS into thinking he was performing only authorized searches, constitutes a "deprivation" within the meaning of the federal fraud statutes. -11- Binding precedents, and good sense, support the conclusion that to "deprive" a person of their intangible property interest in confidential information under section 1343, either some articulable harm must befall the holder of the information as a result of the defendant's activities, or some gainful use must be intended by the person accessing the information, whether or not this use is profitable in the economic sense.7 Here, neither the taking of the IRS' right to "exclusive use" of the confidential information, nor Czubinski's gain from access to the information, can be shown absent evidence of his "use" of the information. Accordingly, without evidence that Czubinski used or intended to use the taxpayer information (beyond mere browsing), an intent to deprive cannot be proven, and, a fortiori, a scheme to defraud is not shown. __________ All of the cases cited by the government in support of their contention that the confidentiality breached by Czubinski's search in itself constitutes a deprivation of property in fact support our holding today, for they all involve, at a minimum, a finding of a further intended use of the confidential information accessed by the defendants. The government's best support comes from United States v. Seidlitz, 589 F.2d 152, 160 (4th Cir. ______________ ________ 1978), in which a former employee of a computer systems firm secretly accessed its files, but never was shown to have sold or  ____________________ 7 For example, had the government established that Czubinski disclosed or intended to disclose taxpayer information, then the deprivation or intended deprivation of property rights would have been shown.  -12- used the data he accessed, and was nevertheless convicted of wire fraud. The affirming Fourth Circuit held, however, that a jury could have reasonably found that, at the time the defendant raided a competitor's computer system, he intended to retrieve information that would be helpful for his own start-up, competing computer firm. In the instant case, Czubinski did indeed access confidential information through fraudulent pretenses -- he appeared to be performing his duties when in fact he used IRS passwords to perform unauthorized searches. Nevertheless, it was not proven that he intended to deprive the IRS of their property interest through either disclosure or use of that information. The resolution of the instant case is complex because it is well-established that to be convicted of mail or wire fraud, the defendant need not successfully carry out an intended scheme to defraud. See, e.g., United States v. Serrano, 870 F.2d ___ ____ _____________ _______ 1, 6 (1st Cir. 1989) (defendant need only participate in a scheme to defraud with the intent to achieve its illicit objectives); Seidlitz, 589 F.2d at 160 (where circumstantial evidence suffices ________ to prove intent to accomplish scheme to defraud, actual use of confidential information need not be shown). The government does not contend either that Czubinski actually created dossiers or that he accomplished some other end through use of the information. It need not do so. All that the government was required to prove was the intent to follow through with a ______ deprivation of the IRS's property and the use or foreseeable use of interstate wire transmissions pursuant to the accomplishment -13- of the scheme to defraud. See, e.g., United States v. Silvano, ___ ____ _____________ _______ 812 F.2d 754, 760 (1st Cir. 1987). In the case at bar, the government failed to make even this showing. The fatal flaw in the government's case is that it has not shown beyond a reasonable doubt that Czubinski intended to carry out a scheme to deprive the IRS of its property interest in confidential information. Had there been sufficient proof that Czubinski intended either to create dossiers for the sake of advancing personal causes or to disseminate confidential information to third parties, then his actions in searching files could arguably be said to be a step in furtherance of a scheme to deprive the IRS of its property interest in confidential information. The government's case regarding Czubinski's intent to make any use of the information he browsed rests on the testimony of one witness at trial who stated that Czubinski once remarked at a social gathering that he intended to build dossiers on potential KKK informants.8 We must assume, on this appeal, that Czubinski did indeed make such a comment. Nevertheless, the fact that during the months following this remark -- that is, during the period in which Czubinski made his unauthorized searches -- he did not create dossiers (there was no evidence that he created dossiers either during or after the period of his unauthorized searches); given the fact that he did not even take steps toward creating dossiers, such as recording or printing out the information; given the fact that no other person testifying  ____________________ 8 Testimony of William J. Murray. See Background, supra. ___ _____ -14- as to Czubinski's involvement in white supremacist organizations had any knowledge of Czubinski's alleged intent to create dossiers or use confidential information; and given the fact that not a single piece of evidence suggests that Czubinski ever shared taxpayer information with others, no rational jury could have found beyond a reasonable doubt that, when Czubinski was browsing taxpayer files, he was doing so in furtherance of a scheme to use the information he browsed for private purposes, be they nefarious or otherwise. In addition, there was no evidence that Czubinski disclosed, or used to his advantage, any information regarding political opponents or regarding the person prosecuting his father. Mere browsing of the records of people about whom one might have a particular interest, although reprehensible, is not enough to sustain a wire fraud conviction on a "deprivation of intangible property" theory. Curiosity on the part of an IRS officer may lead to dismissal, but curiosity alone will not sustain a finding of participation in a felonious criminal scheme to deprive the IRS of its property. B. Honest Services Fraud (Section 1346) B. Honest Services Fraud (Section 1346) In McNally v. United States, 483 U.S. 350 (1987), the _______ _____________ Supreme Court held that the mail and wire fraud statutes do not prohibit schemes to defraud individuals of their intangible, non- property right to honest government services. Id. at 359-60.9 ___  ____________________ 9 Before McNally, however, the fraud statutes had been "read as _______ a broad shield" by this and other circuits, applying, for example, to cases of corruption on the ground that the defendant -15- Congress responded to McNally in 1988 by enacting section 1346, _______ the honest services amendment, which provides: For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services. 18 U.S.C. 1346 (effective Nov. 11, 1988). We have held, after considering the relevant legislative history, that section 1346 effectively restores to the scope of the mail and wire fraud statutes10 their pre-McNally applications to government _______ officials' schemes to defraud individuals of their intangible right to honest services. See Grandmaison, 77 F.3d at 566 ___ ___________ (collecting cases).11 We recently had the opportunity to discuss, at some length, the proper application of the section 1346 honest services amendment to the wrongful acts of public officials. See ___ Sawyer, 85 F.3d at 722-26. The discussion and holding in Sawyer ______ ______  ____________________ had used the mails in furtherance of a scheme to defraud the public of its intangible right to honest services. See, e.g., ___ ____ Silvano, 812 F.2d 754 (1st Cir. 1987) (applying, pre-McNally, _______ _______ mail fraud statute to local political corruption); see generally _____________ United States v. Grandmaison, 77 F.3d 555, 565 (1st Cir. 1996) ______________ ___________ (discussing change wrought by McNally). _______ 10 Identical standards apply in determining the "scheme to defraud" element under the mail and wire fraud statutes. United ______ States v. Boots, 80 F.3d 580, 586 n.11 (1st Cir. 1996) (citing ______ _____ Carpenter, 484 U.S. at 25 n.6). _________ 11 Finding insufficient evidence to convict, we do not reach the issue of whether the honest services amendment raises vagueness concerns. Cf. United States v. Waymer, 55 F.3d 564, 568-69 (11th ___ _____________ ______ Cir. 1995) (rejecting facial vagueness and overbreadth challenge to section 1346). -16- directly guide our disposition of the instant appeal.12 First, as a general matter, we noted in Sawyer that although the right ______ to honest services "eludes easy definition," honest services convictions of public officials typically involve serious corruption, such as embezzlement of public funds, bribery of public officials, or the failure of public decision-makers to disclose certain conflicts of interest. Id. at 724. Second, we ___ cautioned that "[t]he broad scope of the mail fraud statute, however, does not encompass every instance of official misconduct that results in the official's personal gain." Id. at 725. ___ Third, and most importantly, Sawyer holds that the government ______ must not merely indicate wrongdoing by a public official, but must also demonstrate that the wrongdoing at issue is intended to prevent or call into question the proper or impartial performance of that public servant's official duties. Id. at 725 (citing ___ pre-McNally precedent to demonstrate that even where public _______ officials violated state laws, their actions were not found to defraud citizens of their right to honest services, because the officials did not actually fail to perform their official duties properly). In other words, "although a public official might engage in reprehensible misconduct related to an official  ____________________ 12 In Sawyer, we vacated and remanded for further factfinding ______ the mail and wire fraud conviction of a private lobbyist who was found to have violated Massachusetts' gift and gratuity statutes in the course of his lobbying activities. See 85 F.3d at 730-31. ___ The conviction was vacated because the violation of the gift statute, in itself, was held insufficient to establish a scheme to defraud the public of its intangible right to honest services. See id. ___ ___ -17- position, the conviction of that official cannot stand where the conduct does not actually deprive the public of its right to her honest services, and it is not shown to intend that result." Id. ___ Applying these principles to Czubinski's acts, it is clear that his conviction cannot stand. First, this case falls outside of the core of honest services fraud precedents. Czubinski was not bribed or otherwise influenced in any public decision-making capacity. Nor did he embezzle funds. He did not receive, nor can it be found that he intended to receive, any tangible benefit. His official duty was to respond to informational requests from taxpayers regarding their returns, a relatively straightforward task that simply does not raise the specter of secretive, self-interested action, as does a discretionary, decision-making role. Cf. United States v. ___ ______________ McNieve, 536 F.2d 1245, 1251 (8th Cir. 1976) (finding no mail _______ fraud violation where city employee accepted gratuities in connection with non-discretionary duty). Second, we believe that the cautionary language of Sawyer is particularly appropriate here, given the evidence ______ amassed by the defendant at trial indicating that during his span of employment at IRS, he received no indication from his employer that this workplace violation -- the performance of unauthorized searches -- would be punishable by anything more than -18- dismissal.13 "To allow every transgression of state governmental obligations to amount to mail fraud would effectively turn every such violation into a federal felony; this cannot be countenanced." Sawyer, 85 F.3d at 728. Here, the threat is one ______ of transforming governmental workplace violations into felonies. We find no evidence that Congress intended to create what amounts to a draconian personnel regulation. We hesitate to imply such an unusual result in the absence of the clearest legislative mandate. These general considerations, although serious, are not conclusive: they raise doubts as to the propriety of this conviction that can be outweighed by sufficient evidence of a scheme to defraud. The third principle identified in Sawyer, ______ instructing us as to the basic requirements of a scheme to defraud in this context, settles any remaining doubts. The conclusive consideration is that the government simply did not prove that Czubinski deprived, or intended to deprive, the public or his employer of their right to his honest services. Although he clearly committed wrongdoing in searching confidential information, there is no suggestion that he failed to carry out his official tasks adequately, or intended to do so. The government alleges that, in addition to defrauding the public of his honest services, Czubinski has defrauded the  ____________________ 13 See Appendices to Czubinski's Motion to Dismiss (including ___ February 8, 1994 IRS memorandum to employees indicating that the probable penalty for "unauthorized accessing" of taxpayer information ranges from "Reprimand" to "Removal"). -19- IRS as well. The IRS is a public entity, rendering this contention sufficiently answered by our holding above that Czubinski did not defraud the public of his honest services. Even if the IRS were a private employer, however, the pre-McNally _______ honest services convictions involving private fraud victims indicate that there must be a breach of a fiduciary duty to an employer that involves self-dealing of an order significantly more serious than the misconduct at issue here. See, e.g., ___ ____ United States v. Lemire, 720 F.2d 1327, 1332-34 (D.C. Cir. 1983) ______________ ______ (employee took bribes and did not disclose that contractor was overcharging); United States v. Seigel, 717 F.2d 9, 14 (2d Cir. _____________ ______ 1983) (employees used corporate funds for non-corporate purposes); United States v. Boffa, 688 F.2d 919, 931 (3d Cir. _____________ _____ 1982) (union official bribed into accepting lower wages for union members). Once again, the government has failed to prove that Czubinski intended to use the IRS files he browsed for any private purposes, and hence his actions, however reprehensible, do not rise to the level of a scheme to defraud his employer of his honest services. II. The Computer Fraud Counts II. The Computer Fraud Counts Czubinski was convicted on all four of the computer fraud counts on which he was indicted; these counts arise out of unauthorized searches that also formed the basis of four of the ten wire fraud counts in the indictment. Specifically, he was convicted of violating 18 U.S.C. 1030(a)(4), a provision enacted in the Computer Fraud and Abuse Act of 1986. Section -20- 1030(a)(4) applies to: whoever . . . knowingly and with intent to defraud, accesses a Federal interest computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer.  We have never before addressed section 1030(a)(4). Czubinski unquestionably exceeded authorized access to a Federal interest computer.14 On appeal he argues that he did not obtain "anything of value." We agree, finding that his searches of taxpayer return information did not satisfy the statutory requirement that he obtain "anything of value." The value of information is relative to one's needs and objectives; here, the government had to show that the information was valuable to Czubinski in light of a fraudulent scheme. The government failed, however, to prove that Czubinski intended anything more than to satisfy idle curiosity.  The plain language of section 1030(a)(4) emphasizes that more than mere unauthorized use is required: the "thing obtained" may not merely be the unauthorized use. It is the showing of some additional end -- to which the unauthorized access is a means -- that is lacking here. The evidence did not show that Czubinski's end was anything more than to satisfy his  ____________________ 14 "[T]he term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. 1030(e)(6).  -21- curiosity by viewing information about friends, acquaintances, and political rivals. No evidence suggests that he printed out, recorded, or used the information he browsed. No rational jury could conclude beyond a reasonable doubt that Czubinski intended to use or disclose that information, and merely viewing information cannot be deemed the same as obtaining something of value for the purposes of this statute.15 The legislative history further supports our reading of the term "anything of value." "In the game of statutory interpretation, statutory language is the ultimate trump card," and the remarks of sponsors of legislation are authoritative only to the extent that they are compatible with the plain language of section 1030(a)(4). Rhode Island v. Narragansett Indian Tribe, ____________ _________________________ 19 F.3d 685, 699 (1st Cir. 1994) (citing Grove City College v. __________________ Bell, 465 U.S. 555, 567 (1984)). Here, a Senate co-sponsor's ____ comments suggest that Congress intended section 1030(a)(4) to punish attempts to steal valuable data, and did not wish to punish mere unauthorized access:  The acts of fraud we are addressing in proposed section 1030(a)(4) are essentially thefts in which someone uses a federal  ____________________ 15 The district court, in denying a motion to dismiss the computer fraud counts in the indictment, found that the indictment sufficiently alleged that the confidential taxpayer information was itself a "thing of value" to Czubinski, given his ends. The indictment, of course, alleged specific uses for the information, such as creating dossiers on KKK members, that were not proven at trial. In light of the trial evidence -- which, as we have said, indicates that there was no recording, disclosure or further use of the confidential information -- we find that Czubinski did not obtain "anything of value" through his unauthorized searches. -22- interest computer to wrongly obtain something of value from another. . . . Proposed section 1030(a)(4) is intended to reflect the distinction between the theft of information, a felony, and mere unauthorized access, a misdemeanor.  132 Cong. Rec. 7128, 7129, 99th Cong., 2d. Sess. (1986). The Senate Committee Report further underscores the fact that this section should apply to those who steal information through unauthorized access as part of an illegal scheme: The Committee remains convinced that there must be a clear distinction between computer theft, punishable as a felony [under section 1030(a)(4)], and computer trespass, punishable in the first instance as a misdemeanor [under a different provision]. The element in the new paragraph (a)(4), requiring a showing of an intent to defraud, is meant to preserve that distinction, as is the requirement that the property wrongfully obtained via computer furthers the intended fraud. S. Rep. No. 132, 99th Cong., 2d Sess., reprinted in 1986 _____________ U.S.C.C.A.N. 2479. For the same reasons we deemed the trial evidence could not support a finding that Czubinski deprived the IRS of its property, see discussion of wire fraud under section ___ 1343 supra, we find that Czubinski has not obtained valuable _____ information in furtherance of a fraudulent scheme for the purposes of section 1030(a)(4). CONCLUSION CONCLUSION We add a cautionary note. The broad language of the mail and wire fraud statutes are both their blessing and their curse. They can address new forms of serious crime that fail to fall within more specific legislation. See United States v. ___ ______________ -23- Maze, 414 U.S. 395, 405-06 (1974) (observing that the mail fraud ____ statute serves "as a first line of defense" or "stopgap device" to tackle new types of frauds before particularized legislation is developed) (Burger, C.J., dissenting). On the other hand, they might be used to prosecute kinds of behavior that, albeit offensive to the morals or aesthetics of federal prosecutors, cannot reasonably be expected by the instigators to form the basis of a federal felony. The case at bar falls within the latter category. Also discomforting is the prosecution's insistence, before trial, on the admission of inflammatory evidence regarding the defendant's membership in white supremacist groups purportedly as a means to prove a scheme to defraud, when, on appeal, it argues that unauthorized access in itself is a sufficient ground for conviction on all counts. Finally, we caution that the wire fraud statute must not serve as a vehicle for prosecuting only those citizens whose views run against the tide, no matter how incorrect or uncivilized such views are. For the reasons stated in this opinion, we hold the district court's denial of defendant's motion for judgment of acquittal on counts 1, 2, and 4 through 14, to be in error. The defendant's conviction is thus reversed on all counts. reversed ________ -24-