UNITED STATES of America, Plaintiff-Appellant,

v.

Michael DEVEGTER and Richard Poirier, Jr., Defendants-Appellees.

No. 99-8142.

United States Court of Appeals,

Eleventh Circuit.

Dec. 29, 1999.

Appeal from the United States District Court for the Northern District of Georgia.(No. 1:97-cr-508-1-WBH), Willis B. Hunt, Jr., Judge.

Before BLACK and WILSON, Circuit Judges, and HILL, Senior Circuit Judge.

BLACK, Circuit Judge:

The Government appeals the district court's partial dismissal of the indictment against Appellees, Michael deVegter and Richard Poirier, Jr. The indictment charged Appellees with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and wire fraud and honest services fraud, in violation of 18 U.S.C. §§ 1343 & 1346. Appellees moved to dismiss the indictment. The district court granted the motion in part, dismissing the § 1346 counts on the ground that the allegations in the indictment were insufficient to charge violations of that section. The Government argues the district court erred in interpreting § 1346 and that the allegations were sufficient to sustain the § 1346 charges. We agree with the Government that the allegations of the indictment were sufficient to survive the motion to dismiss, and therefore reverse and remand.

## I. BACKGROUND

The federal criminal charges in this case arise from alleged corruption in the process by which Fulton County, Georgia, selected an underwriter for the refunding of municipal water and sewer bonds. The following description of the facts is taken from the allegations in the indictment.

In the summer of 1992, Fulton County, acting through its Board of Commissioners, decided to take advantage of favorable interest rates by refunding some of its bonds. This process required an underwriter. For a professional recommendation about whom the county should select as the underwriter, Fulton County

obtained the services of Stephens, Inc. (Stephens), an investment banking firm. Appellee deVegter was a vice president at Stephens, and was the financial advisor in charge of the Fulton County relationship.

Appellee Poirier was a partner at Lazard Freres & Co., an investment banking firm that desired to obtain the position of senior managing underwriter. Through an intermediary, Nat Cole, Poirier offered to pay deVegter in return for improper intervention and assistance in Lazard Freres winning the contract. Although deVegter told Cole that deVegter did not control the ultimate decision of the Fulton County Board of Commissioners, deVegter agreed to the offer.

Throughout Stephens' process of crafting its recommendation to Fulton County, deVegter repeatedly manipulated the recommendation in favor of Lazard Freres. While Fulton County's "Request for Proposals" from underwriters was being drafted, deVegter sent advance copies to Poirier and incorporated his comments to make the document more favorable to Lazard Freres. Once proposals were submitted, deVegter sent a copy of a competitor's proposal to Poirier so that he could analyze it and provide deVegter with reasons why Lazard Freres' proposal was superior. Later, after another banker at Stephens had ranked the various proposals, deVegter ordered the banker to adjust the rankings so that Lazard Freres became the first-place proposal. The final recommendation from Stephens to Fulton County accordingly ranked Lazard Freres as the best underwriter; Fulton County adopted this recommendation and awarded Lazard Freres the underwriting contract. At no time did deVegter inform Fulton County of his financial interest in recommending Lazard Freres.

The deal was completed when Poirier, through Cole, paid deVegter $41,936 for his manipulation of the selection process. After the transaction was completed, deVegter and Poirier took steps at their respective firms to cover up the misconduct.

Appellees deVegter and Poirier were indicted for conspiracy and wire fraud, including the honest services fraud theory of § 1346. The district court sustained the conspiracy and wire fraud counts of the indictment against Appellees' motion to dismiss. The court granted part of the motion, however, concluding that the allegations of the indictment were insufficient on the § 1346 charges. The court held that § 1346 can

be applied to private sector honest services fraud only when the defendant breached a "clear fiduciary duty." The court found that the indictment failed to allege such a duty and therefore dismissed the § 1346 charges.

## II. DISCUSSION

This court reviews de novo the dismissal of an indictment. *See United States v. Dabbs,* 134 F.3d 1071, 1079 (11th Cir.1998). "Under Fed.R.Crim.P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987). "[T]his court must reverse a dismissal if it concludes that the factual allegations in the indictment, when viewed in the light most favorable to the government, were sufficient to charge the offense as a matter of law." *Id.*

The Government appeals the district court's dismissal of the § 1346 counts on two grounds. First, the Government argues that the district court erred in its interpretation of private sector honest services fraud under § 1346. Second, the Government asserts that the allegations of the indictment relating to the § 1346 charges were sufficient to survive the motion to dismiss.

*A.      Application of § 1346 to Private Sector "Honest Services" Fraud.*

The federal wire fraud statute prohibits the use of the interstate wires to carry out a fraudulent scheme. The statute provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, ... for the purpose of executing such scheme or artifice," commits a federal offense. 18 U.S.C. § 1343. In addition, "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

The § 1346 honest services fraud provision was enacted by Congress in 1988 after the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In

*McNally,* the Supreme Court held that the scope of § 1343[1] encompassed only schemes to defraud another of money or other property rights, but not schemes to defraud another of intangible rights. *See id.* at 360, 107 S.Ct. 2875. "Congress passed [§ 1346] to overrule *McNally* and reinstate prior law," which had extended wire fraud liability to schemes to defraud another of intangible rights, including an intangible right of honest services. *United States v. Lopez-Lukis,* 102 F.3d 1164, 1168-69 (11th Cir.1997). Pre-*McNally* case law had recognized three kinds of intangible rights the defrauding of which would create wire fraud liability. First, defendants were convicted of defrauding persons of nonmonetary, intangible interests. *See McNally,* 483 U.S. at 363-64 & n. 4, 107 S.Ct. 2875 (Stevens, J., dissenting); *United States v. Condolon,* 600 F.2d 7, 8-9 (4th Cir.1979) (scheme to defraud women of time, effort, and expectations with seduction scam using bogus talent agency). Second, government officials were convicted for depriving their constituents of honest governmental services. *See McNally,* 483 U.S. at 362-63 & nn. 1-2, 107 S.Ct. 2875 (Stevens, J., dissenting); *Lopez-Lukis,* 102 F.3d at 1168-69 (citing cases). Third, "[i]n the private sector, purchasing agents, brokers, union leaders, and others with clear fiduciary duties to their employers or unions [were] found guilty of defrauding their employers or unions by accepting kickbacks or selling confidential information." *McNally,* 483 U.S. at 363 & n. 3, 107 S.Ct. 2875 (Stevens, J., dissenting); *United States v. Ballard,* 663 F.2d 534 (5th Cir. Unit B Dec.1981), *modified in part on other grounds,* 680 F.2d 352 (1982).[2] Therefore, this Court has noted that although the paradigm case of honest services fraud is the bribery of a public official, § 1346 is not limited to such conduct but extends to the defrauding of some private sector duties of loyalty. *See Lopez-*

[1]The prosecution in *McNally* involved a violation of the mail fraud statute, 18 U.S.C. § 1341. Except for the jurisdictional nexus (mails in § 1341, interstate wires in § 1343), the statutes are the same, are interpreted identically, and cases decided under one are controlling under the other. *See Belt v. United States,* 868 F.2d 1208, 1211 (11th Cir.1989) ("The statutes are given a similar construction and are subject to the same substantive analysis.").

[2]In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), this Court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

*Lukis,* 102 F.3d at 1165 n. 1. This case involves the alleged commission of honest services fraud by private sector defendants, not a defrauding of the public of the honest governmental services of a public official.[3]

The meaning of the "intangible right of honest services" has different implications, however, when applied to public official malfeasance and private sector misconduct. Public officials inherently owe a fiduciary duty to the public to make governmental decisions in the public's best interest. *See Lopez-Lukis,* 102 F.3d at 1169. "If the official instead secretly makes his decision based on his own personal interests—as when an official accepts a bribe or personally benefits from an undisclosed conflict of interest—the official has defrauded the public of his honest services." *Id.* When the prosecution can prove the other elements of the wire fraud offense,[4] taking kickbacks or benefitting from an undisclosed conflict of interest will support the conviction of a public official for depriving his or her constituents of the official's honest services because "[i]n a democracy, citizens elect public officials to act for the common good. When official action is corrupted by secret bribes or kickbacks, the essence of the political contract is violated." *United States v. Jain,* 93 F.3d 436, 442 (8th Cir.1996). Illicit personal gain by a government official deprives the public of its intangible right to the honest services of the official.

On the other hand, such a strict duty of loyalty ordinarily is not part of private sector relationships. Most private sector interactions do not involve duties of, or rights to, the "honest services" of either party.

---

[3]Public sector honest services fraud falls into two categories. First, "a public official owes a fiduciary duty to the public, and misuse of his office for private gain is a fraud." *McNally,* 483 U.S. at 355, 107 S.Ct. 2875. Second, "an individual without formal office may be held to be a public fiduciary if others rely on him because of a special relationship in the government and he in fact makes governmental decisions." *Id.* (quotation omitted). In this case, it is not alleged that deVegter deprived *the public* of honest *governmental* services. Rather, the indictment alleges that he deprived *Fulton County* of honest *commercial* services by providing corrupted financial advice. Thus, the § 1346 violation charged in this case concerns the defrauding of honest services in the private sector.

[4]The elements of a § 1343 wire fraud offense are that the defendant "(1) intentionally participated in a scheme to defraud; and (2) used wire communications to further that scheme." *United States v. Brown,* 40 F.3d 1218, 1221 (11th Cir.1994). In addition, the Supreme Court recently held that "materiality of falsehood is an element of the federal mail fraud, wire fraud, and bank fraud statutes." *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 1841, 144 L.Ed.2d 35 (1999). Finally, of course, the Government must identify of what the victim has been defrauded—for example, money, property, or the § 1346 intangible right of honest services.

Relationships may be accompanied by obligations of good faith and fair dealing, even in arms-length transactions. These and similar duties are quite unlike, however, the duty of loyalty and fidelity to purpose required of public officials. For example, "[e]mployee loyalty is not an end in itself, it is a means to obtain and preserve pecuniary benefits for the employer. An employee's undisclosed conflict of interest does not by itself necessarily pose the threat of economic harm to the employer." *United States v. Lemire,* 720 F.2d 1327, 1336 (D.C.Cir.1983). A public official's undisclosed conflict of interest, in contrast, does by itself harm the constituents' interest in the end for which the official serves—honest government in the public's best interest. The "intangible right of honest services" must be given an analogous interpretation in the private sector. Therefore, for a private sector defendant to have violated the victim's right to honest services, it is not enough to prove the defendant's breach of loyalty alone. Rather, as is always true in a breach of loyalty by a public official, the breach of loyalty by a private sector defendant must in each case contravene—by inherently harming—the purpose of the parties' relationship.

Other Circuits have established a well-reasoned standard for determining whether private sector misconduct rises to the level of violating the victim's right to "honest services" under § 1346. "The prosecution must prove that the employee intended to breach a fiduciary duty, and that the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach." *United States v. Frost,* 125 F.3d 346, 368 (6th Cir.1997) (citing *Lemire,* 720 F.2d at 1337), *cert. denied,* --- U.S. ----, 119 S.Ct. 40, 142 L.Ed.2d 32 (1998); *see also United States v. Pennington,* 168 F.3d 1060, 1065 (8th Cir.1999) (citing *Jain,* 93 F.3d at 441-42); *United States v. Sun-Diamond Growers of Cal.,* 138 F.3d 961, 973-74 (D.C.Cir.), *aff'd on other grounds,* 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999); *United States v. Czubinski,* 106 F.3d 1069, 1077 (1st Cir.1997); *cf. Ballard,* 663 F.2d at 540 ("a breach of fiduciary duty can constitute an illegal fraud under § 1341 only when there is some detriment to the employer"). The nature and interpretation of the duty owed is a question of federal law.[5]

---

[5]*See, e.g., Frost,* 125 F.3d at 366 ("Federal law governs the existence of fiduciary duty under the mail fraud statute."); *Lemire,* 720 F.2d at 1335-36 ("The duty breached need not arise from state or federal law;  in particular, it may stem from an employment relationship of the sort that imposes discretion and

The cases illuminate this standard for a defrauding of "honest services" in the private sector. In *Frost,* university professors violated § 1346 by knowingly accepting plagiarized dissertations from graduate students, defrauding the university of their fiduciary duties as professors by awarding fraudulently earned degrees and foreseeably harming the university's reputation if the illegitimacy of the degrees were exposed. *See* 125 F.3d at 366-68. Similarly, in *Sun-Diamond Growers,* a partner in a public relations firm violated § 1346 by funneling illegal campaign contributions to a candidate, for which it was reasonably foreseeable that the firm would suffer a significant loss in its primary asset, its public reputation. *See* 138 F.3d at 973-74. In *Ballard,* by comparison, an energy company hired a consultant to obtain the best oil purchase contracts possible, including a right of first refusal for the company. *See* 663 F.2d at 537-42. This Court concluded that the consultant's contract made him an agent of the company, so his undisclosed kickbacks from oil sellers violated his fiduciary duties to the energy company and harmed the company because the nondisclosure was material to the relationship. *See id.* at 540-44 & n. 22 (holding, on honest services theory prior to enactment of § 1346, that conduct constituted violation of § 1341 mail fraud statute). Likewise, in *Pennington,* a CEO violated § 1346 by breaching his fiduciary duty to obtain the most advantageous contracts for the company in return for undisclosed kickbacks. *See* 168 F.3d at 1065. In contrast, § 1346 liability was rejected in *Jain* because although the defendant psychiatrist took unethical referral fees from drug companies, the court concluded that he did not have the specific intent to defraud his patients of his fiduciary duty and that the nondisclosure of the fees was not a material harm to the patients because it did not affect the quality of their treatment. *See* 93 F.3d at 441-42. Similarly, in *Czubinski,* the defendant browsed through his employer's confidential files without authorization, but the court concluded that there was no intent to defraud the employer of the employee's honest services because the employee achieved no private gain from his action. *See* 106 F.3d at 1077. Thus, a private sector violation of § 1346 honest services fraud involves a breach of a fiduciary duty and reasonably foreseeable economic harm.

consequently obligations of loyalty and fidelity on the employee."); *cf. Ballard,* 663 F.2d at 541 ("the duty to disclose ... may be imposed by state or federal statute or may arise from the employment relationship itself"); *cf. also McNally,* 483 U.S. at 377 n. 10, 107 S.Ct. 2875 (Stevens, J., dissenting) (fraudulent scheme need not violate state law to support federal mail fraud conviction).

*B.*     *Sufficiency of the Allegations of the Indictment.*

We next must determine whether the allegations of the indictment were sufficient to survive the motion to dismiss in this private sector § 1346 honest services case. We agree with the Government that the allegations of Fulton County's right to deVegter's honest services were sufficient.[6]

The indictment does not allege in exact words that deVegter owed a "fiduciary" duty to Fulton County. Linguistic precision is not required in an indictment, however. Instead, an indictment may be short and simple—its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense. *See, e.g., United States v. Adkinson,* 135 F.3d 1363, 1375 n. 37 (11th Cir.1998) ("An indictment need do little more than track the language of the statute charged to be sufficient."); *United States v. Fern,* 155 F.3d 1318, 1325 (11th Cir.1998) (indictment sufficient if factual allegations stated therein warrant inference that jury found probable cause for all elements of offense).

The allegations of the indictment implicitly allege that deVegter breached a fiduciary duty owed to Fulton County. Fulton County retained Stephens to provide "independent advice" about whom to hire as an underwriter, and Stephens disclaimed any conflict of interest. "[A]s a financial advisor to Fulton County," deVegter "had a duty to act honestly and faithfully in all of his dealings with Fulton County, and to transact business in the best interest of Fulton County." This duty included obligations "to make full and fair disclosure to Fulton County of any personal interest or profit" and "not to disclose confidential information received in his capacity as a financial advisor." In addition, Fulton County:

> *relied upon* [deVegter] to (a) participate in the formulation of a "Request for Proposals" (the "RFP") to send to prospective underwriters, (b) *independently review and evaluate* underwriting proposals submitted in response to the RFP, and (c) make an *independent recommendation* to the Fulton County Board of Commissioners regarding which investment firms should be [hired as underwriters].

---

[6]There is no dispute that the indictment alleges the other elements of the offense. *See supra* note 4. The indictment expressly alleges that Appellees had the specific intent to defraud Fulton County and used the wires in executing the scheme. Although the indictment was issued prior to the Supreme Court's decision in *Neder,* we conclude that the same allegations that support the sufficiency of the allegation of deVegter's duty also sufficiently allege that the nondisclosure of the bribe was material to Fulton County.

(emphasis added). In breach of these obligations, deVegter took a bribe from Poirier to manipulate Stephens'

recommendation in favor of Lazard Freres, improperly disclosed documents to Poirier, and failed to disclose

the conflict of interest to Fulton County.

Taken together, the allegations of the indictment sufficiently allege that deVegter owed a fiduciary

duty to Fulton County. We therefore need not decide the question reached by the district court—whether a

fiduciary duty is necessary in private sector § 1346 cases.[7] The allegations describe a relationship in which

Fulton County relinquished de facto control of the underwriter selection decision to Stephens. Although the

Board of Commissioners nominally retained the ultimate decision, the reality was that Stephens—and, by

extension, deVegter—maintained a position of dominance, superiority, and influence over Fulton County.

Just as the contract and relationship in *Ballard* made the consultant an agent owing a fiduciary duty of loyalty

to the energy company that was violated by undisclosed kickbacks, this indictment alleges that deVegter had

a fiduciary relationship with Fulton County because he was vested with a position of dominance, authority,

trust, and de facto control in recommending an underwriter.[8]

---

[7]It is clear that a breach of a fiduciary duty, when accompanied by reasonably foreseeable economic harm, is sufficient to state a private sector violation of § 1346. Most private sector § 1346 honest services fraud cases decided in the other Circuits, *see supra* section II.A., like this case, have involved breaches of fiduciary duties. *But cf. United States v. Sancho,* 157 F.3d 918, 921-22 (2d Cir.1998) (relying on text of § 1346 to conclude that court need not decide whether duty owed by private sector consultant was fiduciary because the court found "no doubt" that duty "comes within the statute's requirement of an 'intangible right of honest services' "), *cert. denied,* --- U.S. ----, 119 S.Ct. 1076, 143 L.Ed.2d 79 (1999); *Lemire,* 720 F.2d at 1336-37 (discussing importance of requirement of foreseeable economic harm caused by employee's intent to defraud employer without stating that employee owed fiduciary duty).

[8]"At the heart of the fiduciary relationship lies reliance, and de facto control and dominance. The relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *United States v. Chestman,* 947 F.2d 551, 568 (2d Cir.1991) (citations and quotations omitted). In reversing a conviction because of improper venue, the Second Circuit criticized the indictment and noted that:

> We think the elements of domination or control are of particular importance in a case like this one [involving "nondisclosures to sophisticated corporations in arms-length contractual insurance relationships"], where all parties to the various contractual relationships were concededly sophisticated companies with experience in the industry, and where the alleged victims had a variety of practical and contractual rights to participate in or challenge defendants' decisions.

Finally, the indictment sufficiently alleges that reasonably foreseeable economic harm to Fulton County was a consequence of Appellees' fraudulent scheme. As described above, the purpose of Fulton County's employment of deVegter was to obtain an independent recommendation about the best underwriting proposals submitted. Corrupting the process by which this recommendation was made poses a reasonably foreseeable risk of economic harm to Fulton County because the best underwriter might not be recommended. The indictment then further specifically alleges that deVegter "directed [another] banker to change the rankings by elevating Lazard to first place." By affirmatively acting to recommend an inferior proposal over a superior one, deVegter inflicted reasonably foreseeable economic harm on Fulton County.

The district court therefore erred when it concluded that the indictment's allegations regarding Fulton County's right to deVegter's private sector honest services were insufficient to sustain the § 1346 charges. We reverse the district court's dismissal of those charges and remand for proceedings consistent with this opinion.

## III. CONCLUSION

For the foregoing reasons, the order of the district court dismissing the § 1346 counts of the indictment against Appellees is reversed, and the case remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

*United States v. Brennan,* 183 F.3d 139, 150-51 (2d Cir.1999). In this case, by contrast, the element of de facto control by the defendant is present.