UNITED STATES of America, Appellee,

v.

Anthony SANCHO, Defendant–Appellant.

No. 1101, Docket 97–1406.

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1998.

Decided Sept. 30, 1998.

Edward S. Zas, The Legal Aid Society, New York City, for Defendant–Appellant.

Peter C. Sprung, New York City, (Mary Jo White, United States Attorney for the Southern District of New York, Dietrich L. Snell, Assistant United States Attorney (Of Counsel)), for Appellee.

Before: McLAUGHLIN and LEVAL, Circuit Judges, and POLLACK, District Judge.*

PER CURIAM:

Anthony Sancho appeals from a judgment of conviction entered in the United States District Court for the Southern District of

* The Honorable Milton Pollack, United States District Judge for the Southern District of New       York, sitting by designation.

New York (Shira A. Scheindlin, *Judge*) on the charge of using interstate telephone communications in furtherance of a scheme to deprive the Tishman Construction Company ("TCC") of the intangible right of honest services of a person Sancho believed to be TCC's consultant, in violation of 18 U.S.C. §§ 1343 and 1346. Sancho contends his conviction must be vacated because neither he, nor the person whose honest services were the object of the scheme (who was in fact an undercover government agent posing as a TCC consultant), had a fiduciary relationship to TCC. Sancho contends such a fiduciary relationship is an essential element of the crime. We disagree and therefore affirm.

## BACKGROUND

In the spring of 1995, TCC contacted Sancho, who professed to be the developer of a real estate project then being planned for Asbury Park, New Jersey, to express interest in becoming the construction manager of the project. Sancho met with Daniel Tishman ("Tishman"), President of TCC, and offered TCC the job. During subsequent contract negotiations, Sancho requested that Tishman provide a standby letter of credit for an amount between $300 million and $420 million to secure a construction loan for the project. Sancho claimed the instrument would be "risk-free" and would yield TCC a rate of return of between 10 and 41 percent. In September 1995, Sancho sent Tishman a proposed contract that called for TCC to obtain a $400 million standby letter of credit but identified another firm as manager of the project. Tishman rejected this proposal and suggested he and Sancho meet again.

Sancho and Tishman met twice in October 1995. Meanwhile, FBI agents advised Tishman they were investigating Sancho with respect to an unrelated matter. With Tishman's consent, the agents surreptitiously tape-recorded the meetings between Sancho and Tishman. At those meetings, Tishman questioned Sancho about the letter of credit and Sancho's proposed financing program. Tishman said he would not sign a commitment letter until Sancho disclosed his primary funding source.

After the second tape-recorded meeting, Tishman introduced Sancho to Michael Keeley, an undercover FBI agent posing as "Michael Shannon," a financial consultant hired by TCC to perform due diligence on Sancho's proposal and report back to Tishman. In November and December 1995, the agent recorded several conversations with Sancho. At their first meeting on November 10, 1995, Sancho proposed that TCC provide a $500 million "risk-free" letter of credit that Sancho would place in an investment program operated by a firm called Equidev. The agent responded that before TCC would agree to proceed, he would need to investigate Equidev and determine that its financing program was sound. With Sancho's consent, the agent investigated Equidev. At a later meeting, the agent told Sancho that the investigation revealed Equidev was a fraud. The agent then told Sancho he would conceal this conclusion from TCC and advise it to proceed with Sancho's plan if Sancho paid him $1.25 million. Sancho agreed.

Sancho and the agent coordinated the details of their scheme in several subsequent conversations. In a telephone conversation of November 19, 1995, Sancho told the agent to tell Tishman that Equidev would provide $752 million in project financing. In a telephone conversation of November 21, 1995, the agent told Sancho that he had advised Tishman to proceed with Sancho's proposal and had not disclosed the conflict of interest arising from the payment he would receive from Sancho. Sancho stated that he would disguise the $1.25 million payment to protect the agent. In a telephone conversation of November 29, 1995, the agent asked Sancho for false documentation that would appear to substantiate the agent's due diligence work and recommendation. At their final meeting on December 3, 1995, the agent reported to Sancho that TCC had agreed to the proposal. Sancho then produced a "consulting agreement" documenting $1.25 million in phony commissions that the agent was to receive for supposedly assisting Sancho on three venture capital projects unrelated to the Asbury Park project. Sancho stated that the agent could display the document as proof that the payments were unrelated to the agent's consulting work for TCC. Immediately after the December 3 meeting, Sancho was arrested.

The indictment charged that Sancho used interstate wire communications (telephone calls) on November 19 and 21, 1995, in furtherance of a scheme to deprive TCC of the intangible right of honest services of someone he believed to be TCC's consultant, in violation of 18 U.S.C. §§ 1343 and 1346.

Defendant moved before trial to dismiss the indictment on the ground that the government would not be able to prove that either Sancho or the agent owed a fiduciary duty to TCC, which he claimed was an essential element of the offenses charged. The district court denied the motion. At the close of the government's case, and again after the verdict, Sancho moved for a judgment of acquittal pursuant to Fed.R.Civ.P. 29, renewing his argument that an actual fiduciary relationship was a required element. The court denied the motions. *See United States v. Sancho,* 957 F.Supp. 39, 42 (S.D.N.Y.1997).

The jury found Sancho guilty, and he was sentenced primarily to 37 months' imprisonment and a fine of $6,000.

## DISCUSSION

■ Sancho contends that criminal liability under 18 U.S.C. § 1343 and § 1346 for a scheme to deprive another of honest services requires the existence of a "genuine fiduciary relationship" to the entity being defrauded,[1] and that neither he nor the agent posing as a TCC consultant had such a relationship with TCC.

■ There is no such requirement. Section 1343, the wire fraud statute, provides, in relevant part:

Whoever, *having devised or intending to devise any scheme or artifice to defraud* ... transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings ... signals ... or sounds, for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1343 (emphasis added). In 1988 Congress enacted Section 1346, which provided that the term "scheme or artifice to defraud" would include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346; *see* Pub.L. No. 100–690, § 7603(a), 102 Stat. 4508 (1988).[2] Nothing in either § 1343 or § 1346 indicates that the existence of an actual fiduciary duty is a necessary element of the crime. These statutes make it a crime to devise a *scheme* to deprive another of the right of honest services. *See United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996) (a "scheme to defraud" is an essential element of a mail or wire fraud violation under § 1341 or § 1343); *United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991) (same re § 1341). It is sufficient if the defendant believed the agent had entered into a relationship with TCC under which the agent owed it a legal duty of honest services, devised a scheme or artifice to defraud TCC of those honest services, and participated in a telephone call in interstate commerce with the purpose of executing the scheme.

■ The evidence produced at trial showed that Sancho devised a scheme to deprive TCC of its right of honest services

1. Sancho contends such a requirement is "implicit" in numerous Second Circuit holdings affirming mail or wire fraud convictions that involved breaches of actual fiduciary duties. It was not essential to those holdings, however, that actual breaches of fiduciary duties occurred. *See, e.g., United States v. Altman,* 48 F.3d 96, 102 (2d Cir.1995), *United States v. Margiotta,* 688 F.2d 108, 127–28 (2d Cir.1982), *United States v. Von Barta,* 635 F.2d 999, 1007 (2d Cir.1980). We have found no case in which a conviction was vacated based on the fact that no actual fiduciary relationship existed. In the only reported decision in which an intangible rights deprivation scheme involved the bribery of an undercover government agent, *United States v. Yonan,* 622 F.Supp. 721 (N.D.Ill.1985), the dis-

trict court upheld the indictment because it charged the defendant "with having devised the scheme to defraud." *Yonan,* 622 F.Supp. at 732; *see id.* (finding no legal requirement that an intangible rights scheme "include actual bribery of a ... fiduciary").

2. Section 1346 was enacted in direct response to the Supreme Court's decision in *McNally v. United States,* 483 U.S. 350, 359–60, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987), in which the Court held that the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, did not apply to schemes to defraud another of the intangible right of honest services. *See United States v. Czubinski,* 106 F.3d 1069, 1076 (1st Cir.1997).

when he agreed to bribe someone he believed was TCC's consultant to conceal the fraudulent nature of Sancho's financial project from TCC and to advise TCC to put up the letter of credit Sancho had demanded. That the person was merely pretending to be a consultant is irrelevant. Under §§ 1343 and 1346, so long as the defendant engages in an interstate wire communication for the purpose of executing a scheme to deprive another of the right of honest services, it makes no difference whether the intended victim of the scheme in fact possessed the right that the defendant believed it held.

■ Sancho next contends that even if the agent had in fact been a consultant for TCC, the statute could nonetheless not be violated because a consultancy would not entail a fiduciary duty, and § 1343 can apply only where a fiduciary duty is owed.

We do not accept his argument. Section 1346 does not require the existence of a fiduciary relationship. The essential element of a violation of § 1343, incorporating § 1346, is a scheme to deprive another of the "intangible right of honest services." We have no doubt that, under New York law, a consultant employed by TCC to advise it whether to proceed with the posting of a letter of credit for several hundred million dollars with Equidev, as Sancho was demanding, and who discovered that Equidev was a fraud, would be under a legal duty not to conceal that discovery from TCC, and not to conceal his receipt of a bribe intended to induce him to conceal his discovery. *See, e.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F.Supp. 1314, 1360 (S.D.N.Y.1982), citing *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir.1982)(finding auditor has common law duty to use "professional skill to follow up any signs of fraud that he discovers in the audit" and that "if the auditor knows that the representations in [his] reports are untruthful or is indifferent to whether or not they are truthful," he is liable for fraud); *Maritime Fish Products, Inc. v. World–Wide Fish Products, Inc.*, 100 A.D.2d 81, 474 N.Y.S.2d 281, 285 (1st Dept.1984) (an agent or employee must at all times exercise the utmost good faith and loyalty toward his principal in the performance of his duties, and must account to his principal for secret profits); *Tahini Investments, Ltd. v. Bo-*browsky, 99 A.D.2d 489, 470 N.Y.S.2d 431, 433 (2d Dept.1984)("Where a party to a contract conceals a material fact which he is in good faith bound to disclose, such silence may constitute an actionable misrepresentation."); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir.1984)(under New York law, where a duty of disclosure exists, omissions of material fact may constitute fraud even in the absence of a fiduciary relationship). TCC therefore had an intangible right to its consultant's honest services. We need not ask whether the duty owed is properly considered a "fiduciary duty." What matters is whether it comes within the statute's requirement of an "intangible right of honest services," and we have no doubt that it does.

Sancho cites various cases that state or imply that § 1343 requires the existence of a fiduciary duty. His cases are, however, inappropriate because they either predate the passage of § 1346 or relate to statutes other than § 1343. Before the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), there was judge-made law to the effect that a "scheme or artifice to defraud," as used in the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, could be found not only where the scheme sought to deprive a victim of money or property, but also where the deprivation would be of the intangible right to good faith performance of a duty. *See, e.g., United States v. Von Barta*, 635 F.2d 999, 1006–07 (2nd Cir.1980); *United States v. Bronston*, 658 F.2d 920, 926–27 (2nd Cir.1981). In certain cases, courts either held or assumed, with respect to this judicially-created doctrine, that fraud could be found only where breach of a fiduciary duty was involved. *See, e.g., United States v. Alexander*, 741 F.2d 962, 964 (7th Cir.1984).

Whether, prior to the passage of § 1346, the elements of § 1343 as applied to deprivations of intangible rights required a scheme to breach a fiduciary duty is, however, no longer pertinent. After the Supreme Court ruled in *McNally* that the statutory term "scheme and artifice to defraud" related only to schemes affecting money or property and

not to intangible rights, *see* 483 U.S. at 359–60, 107 S.Ct. at 2881–82, Congress passed a new law, § 1346. Section 1346 specifies that a scheme or artifice to defraud includes a scheme "to deprive another of the intangible right of honest services." What the government must prove to satisfy this element of the offense is defined by Section 1346—not by judicial decisions that sought to interpret the mail and wire fraud statutes prior to the passage of § 1346.

We therefore have no need to decide whether the consultant's duties owed to TCC were of fiduciary nature. We need only answer whether Sancho's scheme to bribe a TCC consultant to conceal the very information TCC had engaged the consultant to discover (and to conceal the bribe) constituted a scheme to deprive TCC of a right of honest services. We have no doubt that it did.

## CONCLUSION

The judgment of conviction is affirmed.