# UNITED STATES of America

v.

# TRIUMPH CAPITAL GROUP, INC. et al.

## No. CR. 3:00CR217(AHN).

United States District Court, D. Connecticut.

April 18, 2002.

Nora R. Dannehy, Thomas V. Daily, David A. Ring, U.S. Attorney's Office, Hartford, CT, John H. Durham, Michael E. Runowicz, William J. Nardini, U.S. Attorney's Office, New Haven, CT, Mark G. Califano, U.S. Attorney's Office, Bridgeport, CT, Linda B. Bridgman, U.S. Securities & Exchange Comm., Boston, MA, David J. Stander, U.S. Department of Justice Criminal Div., Washington, DC, for U.S.

Eathan A. Levin–Epstein, Robert A. Richardson, Garrison levin–Epstein Chimes & Richardson, New Haven, CT, Tracy A. Miner, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Richard M. Egbert, Law Office of Richard M. Egbert, Boston, MA, William F. Dow, III, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Tracey A. Miner, Keith P. Carroll, R. Robert Popeo, Cristina D. Hernandez–Malaby, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, Donald J. McCarthy, Jr., McCarthy, Schuman & Coombes, Hartford, CT, Richard M. Asche, Russell M. Gioiella, Jack T. Litman, Todd B. Terry, Litman, Asche & Gioiella, New York City, John M. McKenna, Goodman, Rosenthal & McKenna, West Hartford, CT, George C. McMahon, North Quincy, MA, Jeremiah F. Donovan, Terry Donovan, Old Saybrook, CT, for Defendants.

## RULING ON MOTIONS TO DISMISS

NEVAS, District Judge.

Pending before the court are motions of defendants Triumph Capital Group, Inc. ["Triumph"], Frederick W. McCarthy ["McCarthy"], Charles B. Spadoni ["Spadoni"], Lisa A. Thiesfield ["Thiesfield"] and Ben F. Andrews ["Andrews"] to dismiss numerous counts of the superseding indictment ("indictment") in this public corruption case. Specifically, all five of the defendants move to dismiss counts one and two, which charge them with conducting and conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity including bribery, bribe receiving, obstruction of justice and witness tam-

pering in violation of RICO, 18 U.S.C. §§ 1962(c) and (d). Triumph, McCarthy, Spadoni and Thiesfield also move to dismiss counts sixteen and seventeen, which charge them with mail fraud/theft of honest services in violation of 18 U.S.C. §§ 1341 and 1346. Additionally, Spadoni moves to dismiss the wire fraud/theft of honest services charges alleged against him in counts twenty through twenty-three.[1]

Because the defendants' motions are merely thinly-veiled challenges to the sufficiency of the government's evidence as opposed to the sufficiency of the government's allegations, the motions [docs. ## 290, 293 and 295] are DENIED.

### STANDARD

A criminal indictment is governed by Rule 7(c), F.R.Crim. P. This rule only requires an indictment to contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." *Id.* To be legally sufficient, an indictment must adequately charge the elements of an offense, fairly inform the defendant of the charges he must meet, and contain enough detail to permit the defendant to plead double jeopardy in a future prosecution based on the same set of events. *See, e.g., United States v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999). Indictments are legally sufficient if they do little more than track the statutory language of the offense charged, state the approximate time and place of the alleged crime, and contain some amount of factual particularity to ensure that the prosecution will not fill in the elements of its case with facts other than those considered by the grand jury. *See id.* The only time an indictment must descend to particulars is when the definition of an offense includes generic terms. *See United States v. Pirro,* 212 F.3d 86, 93 (2d Cir.2000).

Indictments do not have to set forth evidence or details of how a crime was committed. *See, e.g., United States v. Carrier,* 672 F.2d 300, 303–04 (2d Cir. 1982). The validity of an indictment is tested by its allegations, not by whether the government can prove its case. *See Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). Thus, a technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *See, e.g., United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir. 1998) (holding that district court erred in dismissing the indictment based on sufficiency of evidence); *United States v. Paccione,* 738 F.Supp. 691, 696 (S.D.N.Y.1990). "It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency." *United States v. Gambino,* 809 F.Supp. 1061, 1079 (S.D.N.Y.1992), *aff'd,* 17 F.3d 572 (2d Cir.1994).

For these reasons, when the court considers a motion to dismiss an indictment, it must not conflate or confuse permissible claims based on sufficiency of the government's allegations with impermissible claims based on sufficiency of the government's evidence. *See, e.g., United States v. Elson,* 968 F.Supp. 900, 905 (S.D.N.Y.1997). "[I]t would run counter to the whole history of the grand jury institution to permit an indictment to be challenged 'on the grounds that there was

---

**1.** Triumph, McCarthy, Spadoni and Thiesfield have also moved to dismiss the counts alleging a violation of 18 U.S.C. § 666(a)(1)(B), Theft/Bribery Concerning Programs Receiving Federal Funds. That motion is still under advisement.

inadequate or incompetent evidence before the grand jury.' " *United States v. Williams*, 504 U.S. 36, 55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)). Thus, "[b]ased on the role assumed by a faithful grand jury in the accusatory process, an indictment, if valid on its face, is enough to call for trial of the charges on the merits." *United States v. Labate*, No. S100CR632, 2001 WL 533714, at *10 (S.D.N.Y. May 18, 2001) (quoting *Costello v. United States*, 350 U.S. at 363, 76 S.Ct. 406).

## *DISCUSSION*

### I. *Motion to Dismiss Count One—RICO*

Count one of the indictment charges the defendants with a violation of RICO, 18 U.S.C. § 1962(c). All five defendants move to dismiss this count on the grounds that (1) it does not allege a sufficient pattern of racketeering; (2) it does not allege a connection or on-going association among the members of the alleged enterprise; (3) it does not sufficiently allege that the defendants participated in the operation or management of the enterprise; (4) the predicate acts of state law bribery are insufficient racketeering acts; and (5) the Connecticut bribery statute alleged as a predicate act is unconstitutionally vague.

■ To be sufficient, an indictment charging a violation of this section of RICO must allege the following elements: (1) that the defendant was employed by or associated with an enterprise; (2) that the defendant knowingly conducted or participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity; (3) that the defendant knowingly committed or aided and abetted the commission of at least two acts of racketeering; and (4) that the activities of the enterprise affected interstate or foreign commerce. *See United States v. Long*, 917 F.2d 691, 696 (2d Cir. 1990); *see also United States v. Torres*, 191 F.3d 799, 805 (7th Cir.1999), *cert. denied*, 528 U.S. 1180, 120 S.Ct. 1218, 145 L.Ed.2d 1118 (2000); *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995).

The indictment in this case alleges these statutory elements. It charges that from in or about March, 1997, to in or about October, 2000, the defendants knowingly and unlawfully conducted and participated directly or indirectly in the affairs of an enterprise through a pattern of racketeering activity. The members of the alleged association-in-fact enterprise are Triumph, McCarthy, Spadoni, Thiesfield, Andrews and two other individuals who are not charged as defendants, Paul J. Silvester ("Silvester"), the former Connecticut State Treasurer, and Christopher J. Stack ("Stack"). According to the indictment, Triumph is an investment firm with its principal place of business in Boston, Massachusetts. McCarthy is Triumph's Chairman and principal shareholder. Spadoni is Triumph's General Counsel. Thiesfield was an employee of the Connecticut State Treasurer's Office from September, 1997, to May, 1998, when she became campaign manager for the Silvester for State Treasurer Campaign. Andrews was employed as managing director of a company that provided investment services to the Connecticut State Treasurer's Office and was the Republican candidate for Connecticut Secretary of State in 1998. Silvester was, from January, 1995, to October, 1996, the Chief of Staff at the Connecticut State Treasurer's Office. In October, 1996, he became the Deputy Treasurer, and when the elected State Treasurer resigned on July 22, 1997, Silvester was appointed State Treasurer. As State Treasurer, Silvester had sole authority for managing and investing hundreds of millions of dollars of

assets of the Connecticut Retirement Plans and Trust Fund ("CRPTF"). In 1998, Silvester ran as the Republican candidate for Connecticut State Treasurer. He was defeated in the November, 1998 election and left office on January 6, 1999. Christopher A. Stack ("Stack") was a close associate of Silvester. Each of the defendants is alleged to be employed by and associated with the alleged enterprise.

The indictment charges each defendant with at least two acts of racketeering consisting of either bribery, aiding and abetting bribe receiving, obstruction of justice or witness tampering. Further, the indictment alleges that the enterprise was engaged in, and its activities affected, interstate commerce.

In addition to alleging the statutory elements of RICO, the indictment also descends to particulars. Specifically, it alleges that the purpose of the racketeering activity conducted through the enterprise was to enrich the defendants and others through ongoing criminal activity including bribery and fraud; to conceal the defendants' participation in the criminal activity through obstruction of justice and witness tampering; and to conceal Silvester's participation in and enrichment from the criminal activity. The purpose was accomplished by, among other means, corrupting the Connecticut pension investment process through solicitation and payment of bribes, rewards and gratuities, which deprived the citizens of Connecticut of the honest services of the incumbent state treasurer.

The manner and means by which the defendants conducted and participated in the affairs of the enterprise is also particularized in the indictment. The defendants allegedly funneled campaign contributions to the Silvester for State Treasurer Campaign in exchange for the investment of state pension assets; aided and abetted Silvester in the solicitation, acceptance and agreement to accept bribes, rewards and gratuities for, because of, or as consideration for pension fund investments; agreed to pay bribes, rewards and gratuities in consideration for pension investments; and agreed to kick back a portion of the corrupt payments to Silvester.

In this regard, the indictment alleges that Silvester and Stack had a corrupt arrangement whereby Silvester, in connection with pension investments, would direct the investment fund to compensate Stack as a consultant and Stack would then pay Silvester a portion of the consultant fees. The indictment also alleges that the defendants attempted to conceal that Silvester was sharing in the corrupt payments and their participation in the criminal activity through obstruction of justice and witness tampering.

The indictment also provides details of the predicate racketeering activity in which the members of the enterprise engaged. Specifically, the alleged pattern of racketeering activity consists of the following acts: Racketeering Act 1 (bribery) charges that between April, 1998, and July, 1999, Andrews, Silvester and Stack agreed that, in return for Silvester's investment of state pension assets with a firm or fund, Andrews would receive a consulting contract from that firm or fund and would kick back a portion of the money he received to Silvester through Stack. It further alleges that Silvester solicited from Fund A a $1 million consulting contract for Andrews as consideration for an investment of $100 million of state pension assets with Fund A, that Andrews, Silvester and Stack agreed that Andrews would split the $1 million with Stack, and Stack would kick back a portion of his share to Silvester. Then, after Andrews arranged for one-half of his payment to be paid to Stack, Silvester would sign closing docu-

ments investing $100 million of state pension assets with Fund A.

Racketeering Act 2A (bribe receiving) charges that between March, 1998, and November, 1998, Thiesfield aided and abetted Silvester in the receipt of benefits consisting of a $25,000 payment to Thiesfield and financial support to the Silvester for State Treasurer Campaign from McCarthy, Spadoni and Triumph in exchange for an investment of state pension assets in a Triumph-related investment fund. Further, Thiesfield committed an act involving bribe receiving when she aided and abetted Silvester's solicitation, acceptance and agreement to accept from McCarthy, Spadoni and Triumph benefits consisting of financial support to Thiesfield and the Silvester for State Treasurer Campaign as consideration for Silvester's investment of state pension assets in a Triumph-related investment fund.

Racketeering Act 2B (bribery) charges that between March, 1998, and November 8, 1998, McCarthy, Spadoni and Triumph provided benefits consisting of $25,000 to Thiesfield and financial support to the Silvester for State Treasurer Campaign, to Silvester in exchange for an investment of state pension assets in a Triumph-related investment fund. It further charges that between March, 1998, and November 8, 1999, McCarthy, Spadoni and Triumph committed bribery by offering, conferring and agreeing to confer on Silvester those benefits as consideration for Silvester's investment of state pension assets in a Triumph-related investment fund.

Racketeering Act 3 (bribery) charges that between November, 1998, through July, 1999, Andrews committed an act of bribery by offering, conferring and agreeing to confer money to Silvester and Stack as consideration for Silvester's decision to increase by $50 million the amount of state pension assets invested with Fund A.

Racketeering Act 4A (bribe receiving) alleges that between November, 1998, and the date of the indictment, Thiesfield, together with Silvester and Stack, committed an act involving bribe receiving by aiding and abetting Silvester's solicitation, acceptance and agreement to accept from McCarthy, Spadoni and Triumph benefits consisting of consulting contracts for Thiesfield and Stack valued at approximately $2 million as consideration for Silvester's increased investment of state pension assets with Triumph Connecticut–II.

Racketeering Act 4B (bribery) charges that between November, 1998, and the date of the indictment, McCarthy, Spadoni and Triumph committed an act involving bribery by offering, conferring and agreeing to confer consulting contracts valued at approximately $2 million for Thiesfield and Stack as consideration for Silvester's increased investment of state pension assets with Triumph Connecticut–II.

Obstruction of justice and witness tampering are also charged as predicate acts. Specifically, Racketeering Act 5 (obstruction of justice) charges that between May 25, 1999, and April, 2000, Spadoni and Triumph obstructed justice in connection with a federal grand jury investigation by deleting, overwriting or destroying documents and information stored on a laptop computer owned by Triumph and assigned to Spadoni, and by deleting, destroying or failing to produce diskettes which contained documents and information that were relevant to a grand jury investigation. Racketeering Act 6 (witness tampering) charges that in July, 1999, Andrews committed an act of witness tampering by counseling and intimidating an individual to provide false information to a federal grand jury by stating that the money she contributed to the Silvester for State Treasurer Campaign was her own money.

Despite these specific allegations, the defendants maintain that the RICO count is deficient because: (1) the pattern of racketeering does not allege open-ended or closed-ended continuity; (2) there is no connection or on-going association among the members of the alleged enterprise other than the bribery alleged as racketeering acts; (3) there are insufficient allegations as to the defendants' participation in the operation or management of the enterprise; (4) the Connecticut bribery statutes that are charged as predicate acts are insufficient because they do not require a quid pro quo; and (5) the Connecticut bribery statute alleged in racketeering act 2 is unconstitutionally vague as applied.

In light of the expansive allegations in the indictment, the defendants' claims are untenable. While their arguments are couched in terms of legal sufficiency, they are in substance merely premature attacks on the sufficiency of the government's evidence. *See United States v. Alfonso,* 143 F.3d 772, 776–77 (2d Cir.1998). As discussed below, the indictment sufficiently alleges a RICO pattern, an enterprise, the defendants' participation in the enterprise, and legally sufficient and constitutional predicate acts of bribery.

### A. *The RICO Pattern*

One of the statutory elements of a RICO violation is a pattern of racketeering activity. There are three components of the pattern element: (1) there must be two predicate acts of racketeering activity within ten years of one another; (2) the predicate acts must be related; and (3) the predicate acts must reveal "continued or the threat of continued, racketeering activity." *United States v. Diaz,* 176 F.3d 52, 93 (2d Cir.), *cert. denied,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999).

The continuity component is both an open-ended and closed-ended concept.

Open-ended continuity exists where there is past conduct that, by its nature, projects into the future with a threat of repetition. *See, e.g., id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). Closed-ended continuity is primarily a temporal concept. *See DeFalco v. Bernas,* 244 F.3d 286, 321 (2d Cir.), *cert. denied,* 534 U.S. 891, 122 S.Ct. 207, 151 L.Ed.2d 147 (2001). The term refers to a closed period of repeated conduct that extended over a substantial period of time. *See, e.g., United States v. Diaz,* 176 F.3d at 93.

In this case, the defendants maintain that the indictment is deficient because it does not allege either open-ended or close-dended continuity. They assert that there is no closed-ended continuity because the indictment does not allege repeated conduct extending over a substantial period of time. Specifically, they say that the indictment only alleges a bribery scheme that began in March, 1998, and ended in November, 1998, and that this eight-month period is not a sufficiently substantial time period.

The defendants also contend that the indictment does not allege open-ended continuity because the alleged predicate acts do not amount to, or pose a threat of, continuing criminal activity. They say that the charged predicate acts of bribery are crimes that, by their nature, are complete upon the formulation of the agreement to confer something of value on the public official and thus do not project into the future. They further maintain that there is no continuing criminal activity or threat of continuing criminal activity alleged because the bribery would have ended, and did in fact end, when the election for state treasurer was over. Thus, they assert that the indictment only alleges racketeering activity that by its nature could not project into the future, had a

finite goal, and came to a definite and complete end by necessity when Silvester lost the election and would no longer be able to commit such crimes. *See International Bhd. of Teamsters v. Carey,* 163 F.Supp.2d 271, 280 (S.D.N.Y.2001) (finding no open-ended continuity where the indictment alleged a finite and relatively short-lived scheme involving illegal fund raising for defendant's campaign for Teamster's president that ended, by necessity, when the election was over).

The defendants' flawed arguments and reliance on *Carey* miss the mark. Not only do they mischaracterize the indictment as alleging a finite scheme to funnel illegal campaign contributions to Silvester's campaign for state treasurer that came to a natural end when Silvester lost the election, they also mistakenly assume that continuity is an essential element of a RICO offense that must be alleged with particularity to survive a motion to dismiss. *See United States v. Torres,* 191 F.3d at 806; *see also United States v. Palumbo Bros., Inc.,* 145 F.3d 850, 877–78 (7th Cir.), *cert. denied,* 525 U.S. 949, 119 S.Ct. 375, 142 L.Ed.2d 310 (1998); *accord H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) ("[w]hat a plaintiff or a prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter.*"). Moreover, the defendants' arguments conflate what the government must prove at trial with what it must allege in the indictment.

■ Contrary to the defendants' claims, the totality of the factual allegations of racketeering activity by all the members of the alleged association-in-fact enterprise over a substantial period of time are sufficient to reasonably substantiate the existence of closed-ended or open-ended continuity. *See United States v. DiNome,* 954 F.2d 839, 843–44 (2d Cir.

1992); *United States v. Indelicato,* 865 F.2d 1370, 1383 (2d Cir.1989) (en banc); *see also United States v. Alkins,* 925 F.2d 541, 552 (2d Cir.1991) (continuity may be established against a defendant by evidence of crimes by other members of the enterprise not charged in the indictment); *United States v. Coiro,* 922 F.2d 1008, 1017 (2d Cir.1991) (continuity exists where racketeering acts of one defendant spanned only four months but were part of a long-term drug enterprise that was likely to continue absent outside intervention).

The time span alleged in the indictment here is more than two years, from at least March, 1998, to at least April, 2000. Moreover, the nature of the alleged racketeering acts of bribery and obstruction of justice is inherently unlawful. This alone is sufficient to show the threat of continuity and would do so even if the time period spanned by the racketeering acts were shorter. *See United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995). Indeed, the nature of the alleged enterprise itself is sufficient to show a threat of continuity. Where, as here, "the enterprise is an entity whose business is racketeering activity, an act performed in furtherance of that business automatically carries with it the threat of continued racketeering activity." *United States v. Diaz,* 176 F.3d at 72; *see also United States v. Indelicato,* 865 F.2d at 1383–84; *United States v. Kaplan,* 886 F.2d 536 (2d Cir.1989).

In fact, there is nothing in the indictment to suggest that the predicate acts of bribery and obstruction of justice reached a natural end, or that the alleged pattern was a clearly defined, discrete and finite scheme that imported no inherent threat of continuing misconduct. To the contrary, there is nothing in the nature of the alleged predicate acts that suggests the enterprise's activities reached a natural end or that the scheme to bribe Silvester

to obtain investments of state pension assets would have ended if Silvester had been re-elected state treasurer. Merely because Silvester was defeated in his bid for re-election does not render the scheme a discrete and finite one that reached a natural end or one that had no inherent threat of continuing. *See United States v. Aulicino*, 44 F.3d at 1114 (noting that merely because the enterprise abandoned its activities does not mean that there was a discrete and finite project that came to a natural end); *United States v. Fruchter*, 104 F.Supp.2d 289, 297 (S.D.N.Y.2000) (noting that the nature of the predicate acts of defrauding the Postal Service suggested continuity because a jury could infer that the acts would have continued but for the intervention of law enforcement).

■ The court also finds no merit in the defendants' claim that the indictment impermissibly and artificially fragments a single bribery scheme into subparts to create a pattern. This is not an accurate characterization of the allegations, but even if it were, the Second Circuit has held that Congress did not mean to exclude from the reach of RICO multiple acts of racketeering simply because they furthered a single scheme. *See United States v. Indelicato*, 865 F.2d at 1383.

Finally, because the court finds that the allegations of bribery and bribe receiving are sufficient to reveal continuity or the threat of continuity, it does not need to address the defendants' claim that the predicate act of obstruction of justice, consisting of Spadoni and Triumph's efforts to conceal the prior acts of bribery, does not convert a single criminal episode into a pattern. In passing, however, the court notes that the defendants' reliance on *United States v. Biaggi*, 909 F.2d 662, 686 (2d Cir.1990), is misplaced. In *Biaggi*, the court held that the government cannot turn a single episode of bribery into a

RICO pattern by charging a defendant with bribery, providing him an opportunity to deny the bribe, and then charging him with obstruction of justice if he makes a false statement denying the bribe. This is not what is alleged here and thus *Biaggi* is factually distinguishable and inapposite. In the first place, there is more than one act of bribery or one single criminal episode alleged in the indictment. Moreover, unlike *Biaggi*, the alleged predicate act of obstruction of justice here is not merely based on an "exculpatory no", but rather involves the corruption of a grand jury investigation. Accordingly, this case is much closer to *United States v. Teitler*, 802 F.2d 606 (2d Cir.1986), in which the court did not find any deficiency in a RICO pattern consisting of a mail fraud predicate and an obstruction of justice predicate that involved corruption of the grand jury's investigation of the alleged mail fraud.

### B. The RICO Enterprise

■ An enterprise is defined by RICO as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). A RICO enterprise is an entity separate and apart from the pattern of racketeering activity in which it engages. *See id.*

The defendants maintain that the indictment does not sufficiently allege an enterprise because it cobbles together a disparate group of unrelated individuals who had no ongoing association, structure or function. They contend that a properly alleged association-in-fact enterprise must include facts showing that it is an entity separate and apart from the pattern of

racketeering activity in which it engages and that its members were connected or associated on an ongoing basis and engaged in the operation and management of the enterprise.

■ The court does not agree that such factual detail must be alleged. *See United States v. Torres*, 191 F.3d at 806. Once again, the defendants confuse the requirements for pleading a RICO violation with the requirements for proving a RICO violation. A RICO enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.; see also United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir.1991) ("[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by 'what it *does*, rather than by abstract analysis of its structure' ") (quoting *United States v. Bagaric*, 706 F.2d 42, 56 (2d Cir.1983)) (emphasis in original). But the law does not require this proof to be alleged in an indictment.

Nonetheless, although the specific details the defendants seek are not required, the indictment in this case does contain facts showing that the enterprise was an ongoing organization of individuals who functioned as a continuing unit to further a common purpose of corrupting a state official and obtain investments of pension assets. *See United States v. Turkette*, 452 U.S. at 583, 101 S.Ct. 2524; *United States v. Coonan*, 938 F.2d at 1560; *United States v. Perholtz*, 842 F.2d 343, 363 (D.C.Cir.1988); *United States v. Bagaric*, 706 F.2d at 55–56. It identifies the enterprise's members, the roles they played, the

objects of the racketeering activity in which they engaged, and describes the manner and means by which the enterprise operated and its activities. In other words, it provides sufficient details of who its members were and what it did. *See United States v. Coonan*, 938 F.2d at 1559.

■ With regard to the defendants' claim that the indictment does not allege that the members of the enterprise participated in its operation or management as required by *Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the defendants again are guilty of conflating proof with pleading. *Reves* held that the government must prove that a defendant had some part in the operation or management of the enterprise in order to establish that he or she "conduct[ed] or participate[d] in the conduct of the affairs of the enterprise;" *Reves* did not hold that the indictment must allege such operation or management. *See United States v. Fruchter*, 104 F.Supp.2d 289, 297–98 (S.D.N.Y.2000) (rejecting as premature the defendants' motion to dismiss the indictment for failure to allege they were involved in the operation or management of the enterprise); *United States v. Elson*, 968 F.Supp. 900, 905 (S.D.N.Y.1997) (same). The defendants' claim as to the pleading requirements of *Reves* is without merit.

### C. Sufficiency of the Predicate Acts of Bribery

The defendants also claim that the indictment is deficient because the state law bribery crimes that are charged as predicate racketeering activity, Conn. Gen.Stat. §§ 53a–147 & 53a–148,[2] are not proper

---

**2.** Section 53a–147 prohibits any person from conferring or agreeing to confer a benefit on a public servant "as consideration for the recipient's decision, opinion, recommendation or vote." The flip side of this statute is

§ 53a–148, which prohibits a public servant from accepting "any benefit for, because of, or as consideration for his decision, opinion, recommendation or vote."

RICO predicate acts. This is so, they argue, because bribery within the meaning of RICO requires a quid pro quo—a specific intent to give something of value to influence official conduct—but that these Connecticut bribery statutes do not require this specific intent. *See State v. Carr*, 172 Conn. 458, 374 A.2d 1107 (Conn. 1977) (construing § 53a–147 as not requiring specific intent); *State v. Hodge*, 5 Conn.App. 125, 497 A.2d 79 (1985) (construing § 53a–148 as not requiring specific intent), *aff'd*, 201 Conn. 379, 517 A.2d 621 (1986).

█ The defendants' argument misses the mark. The generic offenses that serve as predicate racketeering activity under RICO are murder, kidnaping, gambling, arson, robbery, bribery, extortion and dealing in a controlled substance or listed chemical which are chargeable under State law. *See* 18 U.S.C. § 1961(1)(A); *see also, e.g., United States v. Orena*, 32 F.3d 704, 714 (2d Cir.1994) (noting that an indictment charging RICO only needs to charge these predicate crimes generically). Thus, references to state law crimes in a RICO indictment merely serve a definitional purpose—to identify generally the kind of activity made illegal by the federal statute. *See United States v. Bagaric*, 706 F.2d at 62–63. It is clear that "RICO's allusion to state crimes was not intended to incorporate elements of state crimes, but only to provide a general substantive frame of reference ...." *Id.* Thus, under RICO, the conduct on which the federal charge is based must only be typical of the serious crime dealt with by the state statute. *See id.; see also United States v. Diaz*, 176 F.3d at 96; *United States v. Miller*, 116 F.3d 641, 675 (2d Cir.1997); *United States v. Reale*, No. 96cr1069, 1997 WL 580778 (S.D.N.Y. Sept. 17, 1997).

█ Thus, whether or not the Connecticut bribery statute requires a specific in-tent to influence official conduct is of no moment for purposes of determining the sufficiency of the RICO indictment here. *See United States v. Kotvas*, 941 F.2d 1141, 1145 (11th Cir.1991) (holding that the Florida Unauthorized Compensation Statute is a proper RICO predicate act involving bribery even though it does not require a quid pro quo); *United States v. Garner*, 837 F.2d 1404, 1407 (7th Cir.1987) (holding that the Illinois Official Misconduct statute which proscribes receipt of a gratuity is a proper RICO predicate act involving bribery in the generic sense even though it does not require a quid pro quo); *United States v. Forsythe*, 560 F.2d 1127, 1137–38 (3d Cir.1977) (holding that Pennsylvania statutes proscribing bribery and corrupt solicitation are proper generic RICO predicates); *United States v. Caputo*, No. 85CR451, 1986 WL 1023 (N.D.Ill. Jan. 7, 1986) (same). Indeed, as the Third Circuit noted, "Congress intended to incorporate those acts constituting bribery in the generic sense without regard to whether a particular state regards those acts as bribery under its own law." *United States v. Forsythe*, 560 F.2d at 1136–37.

*United States v. Sun–Diamond Growers of Calif.*, 526 U.S. 398, 406, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), does not compel a different conclusion. *Sun–Diamond* held that to establish a violation of the federal gratuity statute the government must prove a link between a thing of value conferred on a public official and a specific official act for or because of which it was given. *See id.* at 414, 119 S.Ct. 1402. *Sun–Diamond* did not hold that only statutes that require a link between something of value and a specific official act can serve as a predicate act of bribery in a RICO prosecution.

It is sufficient for purposes of this motion to dismiss that the indictment alleges a quid pro quo. Moreover, the govern-

ment will be required to prove a link between the thing of value conferred on the public official and a specific official act for which it was given. In addition, the jury will be instructed that a quid pro quo is a necessary element of the bribery charged as RICO predicate acts.

#### D. *Constitutionality of Connecticut Bribery Statutes As Applied To Campaign Contributions*

The defendants also argue that the absence of a specific intent requirement in the Connecticut bribery statutes that are charged as predicate offenses in Racketeering Act 2 are, under *McCormick v. United States*, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991), unconstitutionally vague as applied to the alleged campaign finance activity. *McCormick* held that campaign contributions are only subject to prosecution for extortion under the Hobbs Act "if they are made in return for an express promise or undertaking by the official to perform or not perform an official act." *Id.* at 273, 111 S.Ct. 1807. Thus, the defendants argue that prosecution in this case of campaign finance activity under Connecticut bribery statutes that do not require a quid pro quo casts an unacceptable chill on the exercise of First Amendment rights and that the state bribery laws are void for vagueness as applied.

The defendants' argument misses the mark. As previously discussed, the generic references to state law bribery crimes in racketeering act 2 serve a definitional purpose of identifying generally the kind of activity made illegal by the federal statute. *See United States v. Bagaric,* 706 F.2d at 62–63. Even if the generic Connecticut statutes do not contain a quid pro quo, the indictment here alleges a quid pro quo— that the campaign contributions were offered and received in exchange for official state acts. The government will have to prove a quid pro quo in connection with the alleged campaign contributions and the jury will be instructed that a quid pro quo is required for conviction. There is, accordingly, no danger that the defendants could be convicted merely for making legitimate campaign contributions or for exercising their First Amendment rights. *See United States v. Jackson,* 72 F.3d 1370, 1376 (9th Cir.1995) (rejecting vagueness and First Amendment challenges to RICO prosecution based on state law bribery statutes that had no quid pro quo element where jury was instructed it had to find a quid pro quo); *United States v. Freeman,* 6 F.3d 586, 594 (9th Cir.1993) (rejecting an as applied challenge to RICO prosecution based on solicitation of campaign funds under a California bribery statute that did not contain a quid pro quo element because the jury was instructed to find a quid pro quo).

Moreover, the defendants have not sustained their burden of establishing that the Connecticut statutes are vague as applied to the alleged campaign finance activity because they have not shown that the challenged statutes "fail to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *United States v. Coonan,* 938 F.2d 1553, 1561–62 (2d Cir.1991).

Accordingly, the defendants' motion to dismiss the RICO count on the grounds that the underlying predicate bribery crimes are unconstitutionally vague as applied is denied. *See Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 58, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) (holding that if the predicate offenses are not unconstitutionally vague, the RICO statute cannot be vague either).

## II. Motion to Dismiss Count Two—RICO Conspiracy

Count two charges the defendants with conspiracy to violate RICO in violation of 18 U.S.C. § 1962(d). "The RICO conspiracy statute, simple in formulation provides: 'It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.'" Salinas v. United States, 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (quoting 18 U.S.C. § 1962(d)).

The defendants assert that the RICO conspiracy claim is deficient because the government has not alleged and cannot prove the existence of an agreement between or among the defendants to violate RICO's substantive provisions or that the defendants agreed to commit predicate acts.

There is no merit to the defendants' claim. The defendants' argument is only applicable to the sufficiency of the government's proof, not to the sufficiency of its allegations, and thus is not cognizable in a motion to dismiss the indictment. The indictment in this case expressly alleges that the defendants conspired and agreed with each other to violate 18 U.S.C. § 1962(c) and that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise. These allegations are facially sufficient.

## III. Motion to Dismiss Counts Sixteen & Seventeen Mail Fraud/Theft of Honest Services

Counts sixteen and seventeen of the indictment charge Triumph, McCarthy, Thiesfield and Spadoni with mail fraud/theft of honest services. The elements necessary to establish this offense are (1) a scheme or artifice to defraud; (2) for the purpose of depriving another of the intangible right of honest services; and (3) the use of the mails in furtherance of the scheme. See 18 U.S.C. §§ 1341 & 1346. Fraudulent intent is an essential element of the crime. See United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir.1994). Here, the indictment charges the defendants with devising a scheme to defraud and deprive the citizens of Connecticut of their right to Silvester's honest services as state treasurer, i.e., performance of his duties free from deceit, favoritism, bias, conflict of interest and self-enrichment.

Counts sixteen and seventeen allege a scheme in which McCarthy, Spadoni and Triumph, who had business with Silvester and sought additional business from him, agreed with Thiesfield and Silvester to provide financial benefits to Thiesfield and Silvester's re-election campaign for the purpose of influencing him and obtaining ongoing favorable treatment from him in connection with investments of state pension assets in a Triumph-related fund.

Specifically, the indictment alleges that Spadoni, on behalf of Triumph and with McCarthy's approval, entered into a $25,000 consulting contract with Thiesfield as a cover to pay her to work as Silvester's campaign manager. In addition, McCarthy, Spadoni and Triumph allegedly agreed to raise money for Silvester's campaign, even though doing so would require them to circumvent state laws which restricted people who had financial dealings with the state treasurer's office from contributing to or soliciting money for his campaign. McCarthy and Triumph allegedly circumvented those laws by raising about $100,000 for the Connecticut Republican Party (CRP) knowing that Silvester had reached an agreement with the chairman of the CRP which led him to expect that the CRP would give his campaign a percentage of the funds it received as a result of his and his campaign's efforts. McCarthy and Spadoni also allegedly dis-

guised their contributions by giving money to others to contribute in their names.

With respect to the use of the mails, the indictment alleges that, "for the purpose of executing and attempting to execute" the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer, the defendants "did knowingly cause to be placed in an authorized depository for mail matter or caused to be sent or delivered by any private or commercial interstate carrier" two items: (1) a letter from the CRP to Kathryn McCarthy in June, 1998; and (2) a statement addressed to the Office of the Secretary of State from the Silvester for State Treasurer Campaign in July, 1998.

The defendants' motion to dismiss these counts is based on two arguments: (1) the alleged mailings could not have been made for the purpose of executing the alleged scheme to defraud; and (2) the indictment does not allege that the defendants acted on the basis of an explicit promise by a public officer to perform a specific, identifiable official act.

## A. The Purpose of the Mailings

The defendants argue that the alleged mailings were not sufficiently connected to or made for the purpose of executing the alleged scheme to deprive the public of Silvester's honest services. They assert that the mail fraud statute criminalizes the use of the mails only "for the purpose of executing" a scheme or artifice to deprive another of the intangible right to honest services. See 18 U.S.C. §§ 1341 & 1346. They contend that this language is jurisdictional and the statute only reaches frauds that are executed by use of the mails—those in which the mailings are sufficiently closely related to the alleged scheme or incident to an essential part of it.

Thus, the defendants contend that the mailings alleged in counts sixteen and seventeen are insufficient predicates because they were routine, after the fact, intrinsically innocent documents that had nothing to do with executing or concealing the alleged scheme. In support of this claim, they rely on facts outside the four corners of the indictment pertaining to the documents. Specifically, they contend that the mailing from the CRP to Kathryn McCarthy, McCarthy's daughter, was a routine, after the fact form letter acknowledging her donation of $5,000 to the CRP. Similarly, they say that the statement addressed to the Office of the Secretary of State from Silvester's campaign was a routine, after the fact disclosure of receipts and expenditures that was mandated by state law.

In opposition, the government asserts that the defendants are prematurely challenging the sufficiency of the evidence rather than the sufficiency of the indictment. It further maintains that the court cannot extrapolate from the extraneous information submitted by the defendants that the evidence at trial will be insufficient to establish the required nexus between the mailings and the scheme. It contends that the information on which the defendants rely cannot be used to determine the sufficiency of the indictment because it does not constitute "a full proffer of the evidence the government intends to present at trial to satisfy the jurisdictional element of the offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir.1998). The court agrees.

██ Because the government has not made, and is not required to make such a proffer, the defendants' challenge based on the sufficiency of the government's proof is premature and is not appropriate at this pretrial challenge to the sufficiency of the indictment. *See id.* Nonetheless, the

court has considered the defendants' arguments as to the sufficiency of the nexus between the mailings and the scheme to defraud and finds them to be without merit. The indictment expressly alleges that the mailings were made "[f]or the purpose of executing and attempting to execute the scheme and artifice to defraud and deprive the citizenry of Connecticut of the honest services of the incumbent State Treasurer." Because the indictment tracks the statutory language, the nexus is sufficiently alleged. *See United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.1992).

The statutory requirement that a mailing be made for the purpose of executing or attempting a scheme to defraud is satisfied if the mailing is "incident to an essential part of the scheme, or a step in [the] plot." *Schmuck v. United States,* 489 U.S. 705, 711, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Thus, as long as a mailing is tangentially related to the scheme, it is a proper predicate. *See id.* This is true even if it is sent by a victim or an innocent third party. *See United States v. Manges,* 110 F.3d 1162, 1169 (5th Cir.1997). It is sufficient if, at trial, the government establishes "that the defendant caused the mailing, i.e., 'act[ed] with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen, even though not actually intended.'" *United States v. Altman,* 48 F.3d 96, 102–03 (2d Cir.1995) (citing *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954)).

Moreover, "there is no requirement that the mailings precede the fraud." *United States v. Slevin,* 106 F.3d 1086, 1089 (2d Cir.1996). The indictment sufficiently alleges that the mailings were made in June and July, 1998, well within the time period of the alleged scheme, and there is nothing that suggests that the documents were mailed after the scheme had reached frui-

tion. *Cf. United States v. Altman,* 48 F.3d at 102 (noting that a mailing cannot further a scheme if it occurs after the scheme reaches fruition).

Likewise, a mailing may be made "for the purpose of executing" a scheme or artifice to defraud even if it is intrinsically innocent, routine or mandated by law. *See Schmuck v. United States,* 489 U.S. at 714–15, 109 S.Ct. 1443 (rejecting claim that routine mailings that are innocent in themselves cannot supply the mailing element of the mail fraud statute).

In sum, whether the mailings were routine, intrinsically innocent, or required by law are factors for the jury to consider in determining whether they were made for the illicit purpose of executing a fraudulent scheme. It is up to the government to introduce evidence at trial to establish this required element of the charged crime. The fact-dependent issue cannot be determined on a pretrial motion to dismiss based on the facial allegations of the indictment or on information outside its four corners.

### B. *The Quid Pro Quo*

The defendants also claim that the mail fraud counts must be dismissed because they fail to allege that the defendants acted on the basis of a promise by a public officer to perform a specific, identifiable official act. *See McCormick v. United States,* 500 U.S. 257, 273, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991). They maintain that where, as here, political contributions are the alleged vehicle of a bribe, proof of a quid pro quo involving an explicit promise to perform a specific official act is necessary to ensure that constitutionally protected, legitimate campaign finance activity is not the subject of the prosecution. *See id.*

The defendants argue that the indictment in this case is deficient because it

merely alleges that their campaign finance activity was done "to secure ongoing favorable treatment" and "in exchange for an investment of state pension assets in a Triumph Capital related investment fund." They maintain that this is no different than saying that they were motivated by a perfectly legal generalized hope or expectation of ultimate benefit. They assert that the allegations are not sufficient because they do not identify a specific investment of state assets in a specific fund and thus the indictment is missing the crucial details required by *McCormick*—the specific, identifiable official act that Silvester promised to perform in exchange for their campaign contributions.

Once again, the defendants' challenge is improperly based on what they anticipate the government will be unable to prove at trial, not on the sufficiency of the indictment's allegations. Such rank speculation as to what the government's evidence will be at trial has no bearing on the sufficiency of what the government has alleged. Nonetheless, the court has considered their claimed deficiencies in the indictment's details, but finds them to be without merit.

Counts sixteen and seventeen contain the necessary allegations of specific intent and also allege a quid pro quo. These counts expressly state that the defendants acted "with the intent to deceive the citizenry of Connecticut" and "with the intent to influence and cause [Silvester]" not to honestly perform his official duties, and with "inten[t] to devise a scheme and artifice to defraud" and that with such intent, they agreed to provide financial support to Thiesfield and the Silvester campaign "to secure ongoing favorable treatment from Silvester in derogation of the public's right to his [honest services]" and "in exchange for an investment of state pension assets in a TRIUMPH CAPITAL related invest-

ment fund." This constitutes far more than the claimed "vague allegations" that the defendants made campaign contributions with a "hope and expectation" of some unidentified future benefit.

## IV. *Motion to Dismiss Counts Sixteen, Seventeen & Twenty through Twenty-Three—Mail & Wire Fraud/Theft of Honest Services*

Finally, Spadoni moves to dismiss the mail and wire fraud theft of honest services charges in counts sixteen, seventeen and twenty through twenty-three on the additional ground that they fail to allege that Spadoni intended Silvester violate any state law which defines the term "honest services" as used in § 1346. He relies on a Fifth Circuit case, *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir.), *cert. denied*, 522 U.S. 1028, 118 S.Ct. 625, 139 L.Ed.2d 606 (1997), which held that a violation of § 1346 requires proof that the conduct of a state official breached a duty respecting the provision of services owed to the official's employer under state law. He also argues that federalism concerns require such an interpretation of § 1346 to curb federal power in favor of state authority and impose limits on federal prosecutions of state and local officials.

 Spadoni's arguments are not persuasive and absent Second Circuit authority, will not be adopted in this case. Rather, the court agrees with the reasoning of other circuits that the theft of honest services element of a mail or wire fraud prosecution does not need to be grounded in state law. *See, e.g., United States v. Sawyer*, 239 F.3d 31 (1st Cir.2001) (noting that one way a public official can steal his honest services from his public employer is to be influenced or otherwise improperly affected in the performance of his duties and holding that "[b]ecause the duty of honest services owed by government officials de-

462

rives from fiduciary duties at common law as well as from statute, there is no need to base a mail fraud prosecution on allegations that the defendant also violated state law."); *United States v. Martin,* 195 F.3d 961, 966 (7th Cir.1999) (expressly declining to follow *Brumley* ).

Further, the reasoning of the Second Circuit in recent cases involving interpretation of § 1346 also supports this court's rejection of Spadoni's argument. In *United States v. Sancho,* 157 F.3d 918, 920 (2d Cir.1998), the court held "that [§ 1346] does not require an actual fiduciary relationship between the individual who defendant believes provides services and the entity being defrauded of honest services." *Id.* at 920 (rejecting argument that bribery did not fall within honest services where defendant owed intended victim a legal, but not a fiduciary duty). According to the Second Circuit, the important factor is "that the defendant engaged in conduct for the purpose of executing a scheme to deprive another of the right of honest services." *United States v. Middlemiss,* 217 F.3d 112, 120 (2d Cir.2000) (citing *Sancho,* 157 F.3d at 921). Thus, in *Middlemiss,* relying on *Sancho,* the court held that "as long as defendants engaged in a scheme to deprive [the public employee] of honest services, there is no requirement that the scheme also implicate [the state employee's] official duties." *Id.* In both *Sancho* and *Middlemiss,* the court looked only to whether there was a legal duty to provide honest services and did not impose any requirements on the nature of that duty. *See United States v. Handakas,* 286 F.3d 92, 116 (2d Cir.2002) (holding honest services provision of mail fraud statute void for vagueness as applied to prosecution based on breach of contractual duties) (Feinberg, J, dissenting in part and concurring in part).

Unless the Second Circuit determines that prosecution of a public official under § 1346 requires the breach of a duty respecting the provision of the services owed by the official to the official's employer under a specific state law, the allegations in the indictment here are sufficient to support the mail/wire fraud theft of honest service charges alleged in counts sixteen, seventeen and twenty through twenty-three.

*CONCLUSION*

For the foregoing reasons, the defendants' motions to dismiss [docs. ## 290, 293 and 295] are DENIED.