**UNITED STATES of America,**

v.

**Paul ADLER, Defendant.**

No. 03 CIV. 4559(CLB),
00 CR. 1284(CLB).

United States District Court,
S.D. New York.

July 31, 2003.

James B. Comey, United States Attorney, By Andrew J. McCarthy, Assistant U.S. Attorney, United States Attorney's Office, Southern District of New York, White Plains, for Plaintiff.

Murray Richman, Esq., Bronx, for Defendant.

### Memorandum and Order

BRIEANT, District Judge.

By motion pursuant to 28 U.S.C. § 2255 filed June 24, 2003, heard and fully submitted for decision on July 30, 2003, Mr. Paul Adler seeks relief from the judgment of conviction following his plea of guilty to one count of Mail Fraud in Violation of Sections 1341 and 1346 of Title 18 in the United States Code and one count of Tax Fraud Conspiracy in violation of 18 U.S.C. § 371.

The amended judgment was filed on February 26, 2003. No direct appeal was taken. At one point, prior to the entry of judgment in the case, Mr. Adler sought to withdraw his plea based upon the intervening decision of our Court of Appeals in *United States v. Handakas,* 286 F.3d 92 (2d Cir.2002). However, he voluntarily withdrew that application prior to the imposition of sentence.

*Mail Fraud*

The Superseding Information charged that Mr. Adler, from 1996 through September 2000, was Chairman of the Democratic Party of Rockland County, New York and, prior to that time, had served as Chairman of the Democratic Party of Clarkstown, New York. Israel and Yosef Herskowitz, father and son, were the owners of the Smith Farm in the Town of Clarkstown, a 113 acre tract zoned for single-family residential use. From 1996 through January 2002, the Herskowitzes attempted to obtain Planning Board approval for a subdivision. Beginning in 1997, Mr. Adler agreed to accept a substantial cash payment from the Herskowitzes "in exchange for using his political influence to obtain approval for the Smith Farm Project from the Planning Board in a speedy manner and with the highest number of lots possible". Following these preliminary allegations, the S1 Information charges in Count I that Mr. Adler, having devised and intending to devise a scheme and artifice to defraud, that is, to further the Smith Farm Project, by offering John Caine, a member of the Planning Board of the Town of Clarkstown, a [federal] government job with the intent of influencing Caine to use his position on the Planning

Board to further the Project and to thereby "deprive the citizens of the Town of the intangible right to Caine's honest services" and thereafter, for the purpose of executing such scheme and artifice, caused matters to be mailed.[1]

Mr. Adler, a real estate broker and law school graduate who does not practice law, appeared before the Court on February 20, 2001 for the purpose of allocuting under a plea agreement to both counts of the Superseding Information. He was represented by Murray Richman, Esq., a personal friend and respected criminal practitioner. He waived indictment with respect to the superseding information.

Mr. Adler entered a plea of guilty to both counts pursuant to a written plea agreement. Mr. Adler informed the Court as follows: (T. at 19)

> From 1996 until my arrest in this case, I was Chairman of the Rockland County Democratic Committee. John Caine was a member of the Clarkstown Planning Board through the 1990's. The Herskowitzes were developers in Rockland County who, in 1999, were attempting to obtain Planning Board approval for Subdivision at Smith Farm in Rockland County.
>
> Regarding Count 1, I attempted to obtain a government job for John Caine so that he would use his influence on the Planning Board to obtain speedy and favorable Planning Board approval for the Herskowitzes Smith Farm building project.
>
> My interest in the Smith Farm Project was that the Herskowitzes had agreed to pay me if I could help them get the Smith Farm Subdivision through the Planning Board process. On more than one occasion, I accepted payments from the Herskowitzes as partial payment for my work.
>
> I knew back in 1997 that Caine wanted a government job. In the Spring of 1999, when the Planning Board was beginning to actively consider the Smith Farm application from Herskowitz, I contacted Caine and invited him to lunch. Prior to that meeting, at that meeting and subsequent to that meeting, I often used my political contacts to obtain a government job for Caine. I conveyed to Caine that I wanted his help with the Smith Farm approvals in exchange for a job. I believed that Caine understood the deal. On more than one occasion, I made calls to various government agencies in an attempt to find Caine a job to fulfill my end of the bargain.
>
> I know that the U.S. Mail was used in furtherance of this plan.

This proceeding was filed as a result of the reading by Mr. Adler, while in prison, of the reported decision of the United States Court of Appeals for the Third Circuit in *United States v. Murphy*, 323 F.3d 102(3d Cir. March 19, 2003). The argument is that Count 1 should be vacated because, as a matter of law, Mr. Adler did not owe a duty of honest services to the citizens of Rockland County. In *Murphy*,

---

1. Caine was but one of five voting members of the Planning Board. Such boards in the suburban communities are notorious for being composed of idiosyncratic unsalaried persons, with no particular expertise in land use planning, appointed by the Town Board through the political process often as a stepping stone to elective office. Most are anti-growth and under the guise of protecting the quality of life in the community delay development projects at great cost and inflict changes in the design and location of proposed streets and utilities, also at great cost. Such activities, performed with little objective statutory guidance, invite favoritism and bribery and increase the cost of housing in the region. We were told at oral argument that the Smith Farm Subdivision has still not been approved. It seems doubtful that a single member's vote would affect the outcome.

the Third Circuit found a "need to establish a violation of State law in such cases to serve as a limiting principle on the federal prosecution of local political actors" and held that "without the anchor of a fiduciary relationship established by State or Federal law, it was improper for the District Court to allow the jury to create one." The Third Circuit expressly declined to rely on the Second Circuit's decision in *United States v. Margiotta*, 688 F.2d 108(2d Cir.1982). The *Margiotta* decision, which involved a patronage scheme widely practiced on a state and local level, has been widely criticized by practically everybody including the writer. *Margiotta* was a private individual who happened to be the Chairman of the Republican County Committee of Nassau County and also of the Town of Hempstead located therein. It was the theory of the conviction in *Margiotta* that a jury could find that the defendant owed a fiduciary duty to the public because others, including local officials, relied on him by reason of his political position and that he was, in fact, making government decisions and presumably the elected and public officials who actually engaged in the mail frauds charged, were all mere puppets and rubber stamps.

The Court of Appeals was unable to hear the case *en banc* because of the disqualification of a Judge, resulting in a tie vote and *Margiotta* went to prison. The opinion contains a strong dissent by Circuit Judge Winter, relied on heavily by the Third Circuit in *Murphy*. After *Margiotta's* case had come and gone, the Supreme Court of the *McNally v. United States*, 483 U.S. 350, 359–60, 107 S.Ct. 2875, 97 L.Ed.2d 292(1987) held that the Mail and Wire Fraud Statutes were directed solely to schemes to deprive a victim of money or property, and not intangible rights.

Congress, dissatisfied with *McNally* and failing to understand the ramifications of the *Margiotta* prosecution, later enacted § 1346 of Title 18 which provides that a scheme or artifice to defraud shall thereafter include a scheme to deprive another of the intangible right of honest services.

While the legislative history of § 1346 seems to indicate an intention to resurrect the pre-*McNally* case law relating to the deprivation of intangible rights by use of the mails, our Circuit has held in *United States v. Sancho*, 157 F.3d 918, 921–922(2d Cir.1998) that pre-*McNally* cases construing the prior statute are not binding, and that the new offense was defined by statute, § 1346, not by pre *McNally* judicial decisions. This would suggest to the reasonable reader that the *Margiotta* Decision has been repudiated in this Circuit, although that it is by no means clear.

Thereafter, a divided panel of our Court of Appeals in *United States v. Handakas*, 286 F.3d 92 (2002) held that the new statute was unconstitutionally vague as applied, and violated the due process requirement of fair notice. The defendant in *Handakas* operated a construction company which violated the required New York prevailing rate of wage contract provisions for public improvements, and thereby deprived the City government of the honest services of Handakas' company, by causing it to pay substandard wages. No fiduciary duty existed between Handakas or his company and the city agency with which his company contracted.

Thereafter, our Court of Appeals affirmed a conviction in *United States v. Rybicki*, 287 F.3d 257, rehearing *en banc* granted July 3, 2002 and apparently unresolved. In that case, a law firm had developed a practice of making payments through middlemen or expediters to insurance company adjusters, in return for more favorable or more prompt resolution of negotiated settlements in personal injury lawsuits. Here again, the defendants

owed no fiduciary duty to the insurance companies. Citing and purporting to distinguish *Handakas,* a panel of the Court of Appeals affirmed the conviction.

It is beyond denial that a certain degree of tension exists between the opinion in *Handakas* and that in *Rybicki.* *Handakas* was also distinguished by the Court of Appeals in *United States v. Szur,* 289 F.3d 200, 209(2d Cir.2002), which involved a conspiracy by a stockbroker to peddle the stock of a co-conspirator's corporation to his unsuspecting customers for an excessive fifty percent commission, the size of which was not disclosed, thereby depriving the brokerage customers of the right to the honest services of their stockbroker. The Court in *Szur* held that the defendant breached or induced a breach of a fiduciary duty enforceable by an action in tort, and therefore the statute was not vague as applied.

The problem presented by prosecution for fraud of intangible rights is serious and has been, long before *McNally* or *Handakas* or *Rybicki.* This Court agrees that *Margiotta* was wrongly decided and is no longer good law in this Circuit or anyplace, as found by the Third Circuit in *Murphy.* Mr. Adler was not a person who owed a duty to the public and neither was *Margiotta.* His sole obligations were to the Democratic Party members, in connection with the recruiting and nominating of candidates, the collection of contributions to fund campaigns, and resolving issues of party platform.

Mr. Adler, however, misapprehends the nature of the charge against him. It is not charged that he deprived the public of the intangible right to *his honest services* as a Party Chairman, but rather that he, along with the Herskowitzes, attempted, by a scheme using the mails, to deprive the citizens of the Town of Clarkstown of the intangible right to *Caine's honest services*

as a public official, Member of the Planning Board. The allegation that Mr. Adler held party office is mere surplusage alleged to show that he had the capability of obtaining a federal job for John Caine. The essence of the crime has to do with John Caine's intangible duty of honest services to the public and the Town and not any intangible right which the public or the Town had with respect to Mr. Adler.

■ Accordingly, following the amendment of the statute, this Court concludes that the Statute is not void for vagueness as applied with respect to Caine's obligations, and anyone who joins as a schemer to violate the law with respect to Caine's obligations may properly be convicted of mail fraud.

*The Tax Count*

Count 2 charges Mr. Adler between 1996 and 2000 with having conspired to defraud the Internal Revenue Service and to defeat the lawful functions of the IRS in the ascertainment, computation, assessment and collection of taxes. The theory of the conspiracy was that, to avoid declaring income of the partnership, Kunis and Adler, he caused $150,000 to be paid to a company controlled by a co-conspirator, for non-existent services and that the money provided to the company was treated as a loan by that company and re-paid directly to Adler free of income tax.

At his allocution, with respect to the tax count, Mr. Adler said: (T. at 21)

Regarding my underreporting, I intentionally did not report approximately $52,000 in income that I had received from Pyramid and Eklec Co. in 1996 and 1997.

In addition, in 1996, I did not report $150,000 in business income. Instead of taking this money as income from my business, I loaned the money directly

from my business to the business of my neighbor's company and then my neighbor paid the money back the following year.

I falsely told the accounting firm that was preparing my tax returns that the $150,000 was income to my neighbor's company in the form of a fee.

He also mentioned other improper deductions taken by the business and conceded that he had specific criminal intent at the time he acted to defraud the Internal Revenue Service. The motion to vacate Count 2 is based solely on the fact that it ultimately developed that Mr. Adler overpaid his 1996 taxes and received a refund.

■ Since the allocution shows a conspiracy (between Adler and his neighbor) and that more than one overt act was committed in furtherance of the conspiracy, the Court fails to see any infirmity with respect to the conviction on Count 2. The unlawful agreement followed by the overt act is sufficient even if no taxes are actually evaded. A conspiracy need not be successful in order to result in criminal liability. As to this point, the motion clearly lacks merit.

### Conclusion

For the foregoing reasons, the motion is in all respects denied for lack of merit. In light of the current confusion of the case law, and the tension discussed above between *Handakas* and *Rybicki,* this Court will issue a Certificate of Appealability to Mr. Adler with respect to so much of the motion as relates to Count 1, the issue being whether the mail fraud statute is void for vagueness.

SO ORDERED.